CALOGERO, Justice.
On September 25, 1975 the East Baton Rouge Parish Grand Jury indicted Clarence Willis for aggravated rape, a violation of R.S. 14:42. Since the crime with which defendant was charged was committed on September 13, 1975, the law applicable was that enacted by Act 612 of 1975, which provided a penalty of death in the event of conviction. However, Willis’ trial did not *962 commence until September 13, 1976 and concluded when the jury returned a verdict of guilty as charged on September 17,1976. The dates of such trial commencement and jury verdict were subsequent to the decision of the United States Supreme Court in Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). That decision decreed that the imposition and carrying out of the death penalty in aggravated rape cases in Louisiana constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.[1] The fact that the death penalty was unavailable because of the Selman decision was recognized by the trial court at sentencing, for notwithstanding the jury verdict finding Willis guilty as charged Willis received fifty years, the maximum sentence imposable for the next lesser included offense, attempted aggravated rape, in accordance with this Court’s decisions in State v. Sledge, 340 So.2d 205 (La.1977) and numerous other cases deciding the applicable penalty in aggravated rape cases affected by the Selman decision. On this appeal of his conviction and sentence Willis urges seventeen assignments of error. We find it unnecessary to consider any of the assignments other than assignment two.
ASSIGNMENT OF ERROR NO. 2
While the voir dire examination of prospective jurors was being conducted the court upheld twenty-eight state challenges for cause. The challenges were based on these jurors’ stated inability to find the defendant guilty as charged, even in the event that the state satisfied its burden of proof, in light of the fact that such a finding would lead to the imposition of the death penalty. The defense objected to the dismissal of the prospective jurors for cause, arguing that the death penalty under the aggravated rape statute was unconstitutional.
In arguing this assignment defendant points out that the prospective jurors’ attitude toward capital punishment should have been irrelevant because the death penalty was not available at the time of his trial in the event of a conviction on the charged offense. The State concedes that Selman held the mandatory death penalty for aggravated rape constitutionally invalid, but argues that the Selman ruling was not final as of the September 1976 date of Willis’ trial, there having been pending at that time a rehearing application which was not denied by the United States Supreme Court until October 12, 1976.
Our law provided at that time, as it does now, for a state challenge for cause in the event a prospective juror in a capital case has conscientious scruples against infliction of capital punishment which would preclude a vote in favor of conviction of the crime charged regardless of the evidence developed at trial, or would prevent an impartial decision as to a defendant’s guilt.[2] We must determine whether at the outset of this September, 1976 trial defendant was actually exposed to imposition of the death penalty and, thus, whether the challenges sustained by the trial court were proper.
*963 A determination that the trial court’s allowing these challenges for cause was erroneous compels a reversal of this defendant’s conviction since rulings sustaining the challenges, if erroneous, have the effect of granting to the State more peremptory challenges than that to which it is entitled by law.[3] In fact, the erroneous dismissal of the twenty-eight prospective jurors here based on their inability to return a verdict which would result in the imposition of the death penalty, would in this case afford the state more than twice the number of peremptory challenges allowed by law. Furthermore, defendant here contends these challenges had the effect of excluding from the jury persons who, arguably at least, would be more likely to apply scrupulously the state’s burden of proof, defendant’s presumption of innocence and other pertinent provisions of law on which they would be instructed during the trial.
As noted hereinabove, the United States Supreme Court determined in Selman, supra, that the death penalty in aggravated rape cases in Louisiana was unconstitutional. That opinion was rendered on July 6, 1976. Rule 58 of the United States Supreme Court pertinently provides: “. . .A petition for rehearing of judgments or decisions other than those denying or granting certiorari, may be filed with the clerk in term time or in vacation, within twenty-five days after judgment or decision, unless the time is shortened or enlarged by the court or a justice thereof. .” In Selman, within twenty-five days following rendition of the decision of July 6, 1976, a motion for extension of time within which to file a petition for rehearing was filed by the state and was granted, allowing the state until September 1, 1976 in which to file the petition for rehearing.
However, unlike here in Louisiana, where a decision of this Court upon a criminal appeal becomes final only after a timely filed application for rehearing is denied[4] the United States Supreme Court Rules provide differently. Rule 59 states in pertinent part:
[Mjandates shall issue as of course after the expiration of twenty-five days from the day the judgment is entered, unless the time is shortened or enlarged by an order of the court or of a justice thereof, or unless the parties stipulate that it be issued sooner. The filing of a petition for rehearing will, unless otherwise ordered, stay the mandate until disposition of such petition, and if the petition is then denied, the mandate shall issue forthwith. When, however, a petition for rehearing is not acted upon prior to adjournment or is filed after the court adjourns, the judgment or mandate of the court will not be stayed unless specifically so ordered by the court or a justice thereof. (Emphasis provided)
In Selman, supra, which was decided on the day of adjournment, the state applied for a stay of mandate at the time that it requested time within which to petition for rehearing. The stay of mandate sought by the state was denied, and the United States Supreme Court’s mandate was issued, (prior to the date [October 12, 1976] when the state’s application for rehearing was denied), on August 11, 1976. Thus the mandate of the United States Supreme Court in Selman, supra, by which the United States Supreme Court apprised this Court that its judgment in State v. Selman, *964 (300 So.2d 467 [La.1974] was vacated insofar as it left undisturbed the death penalty imposed, had issued four and a half weeks prior to the commencement of defendant Willis’ trial, protecting Willis and others like him from exposure to the death penalty. Accordingly, inquiry by the state regarding prospective jurors’ scruples against capital punishment in this case was wholly irrelevant. C.Cr.P. art. 798’s state challenge for cause relative to conscientious scruples against infliction of capital punishment was not pertinent.
The state was allowed twenty-eight challenges for cause to which they were not legally entitled. Coupled with the four peremptory challenges which they also exercised, the effect of the rulings was the exercise by the state of more than the twelve peremptory challenges (C.Cr.P. art. 799) to which they were entitled. The negative implication of the second paragraph of C.Cr.P. art. 800 (see footnote three) is that these erroneous rulings do afford the defendant a ground for complaint.

Decree

Inasmuch as the error constitutes a substantial violation of a statutory right we are required to reverse defendant’s conviction. C.Cr.P. art. 921; State v. Lemelle, 353 So.2d 1312 (La.1978). Defendant’s conviction and sentence are thus reversed and set aside and the case remanded for re-trial.
REVERSED AND REMANDED.

. The Selman decision decreeing the death penalty in Louisiana aggravated rape cases unconstitutional was based on the United States Supreme Court’s decision in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) which struck our state’s mandatory death penalty scheme. A year later, in Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the United States Supreme Court found the death penalty in aggravated rape cases unconstitutional per se.

. C.Cr.P. art. 798 provides in pertinent part: It is good cause for challenge on the part of the state, but. not on the part of the defendant, that:
******
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant’s guilt; .

. Article 800 of the Code of Criminal Procedure provides in pertinent part:
The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.
Article 799 sets forth the number or peremptory challenges available, providing:
In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant.

. Article 922 of the Code of Criminal Procedure states, in pertinent part:
. . If an application for a rehearing has been made timely, a judgment of the appellate court becomes final when the application is denied.”