371 So.2d 746 (1979)
STATE of Louisiana
v.
Darnell BROWN.
No. 63171.
Supreme Court of Louisiana.
May 21, 1979.
Rehearing Denied June 25, 1979.
*747 Robert Barnard, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Thomas Chester, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.
Defendant, Darnell Brown, was charged by bill of information with simple burglary in violation of LSA-R.S. 14:62. On August 23, 1978, after trial before a jury of six persons, defendant was found guilty as charged, the verdict being five to one. Thereafter, the State filed a bill of information pursuant to LSA-R.S. 15:529.1 charging defendant as a third felony offender. At the multiple offender hearing defendant pled guilty and was sentenced as an habitual offender to serve twenty-two years at hard labor in the custody of the Department of Corrections.
Defendant has assigned ten errors as the basis for his appeal before this Court.
In July, 1978, Levertes Dorsch and her daughter, Kenella Dixon, were living respectively at 2930 and 2932 Florida Avenue, a double shotgun house located in New Orleans. On the morning of July 20, 1978, Ms. Dixon took her mother to work and then stopped to pick up some things at the supermarket. After she returned home at about 10:00 a. m., she heard noises which sounded like footsteps from her mother's side of the double. After a brief investigation outside during which she observed that a back window had been broken, she called the police. Defendant was discovered inside Ms. Dorsch's residence by the law enforcement officers. He had been packing various items in the house, including cameras, radio, television, et cetera, into boxes and pillow cases. Defendant was arrested and subsequently charged with simple burglary.
Before the trial court, ten assignments of error were filed on behalf of defendant. In brief, no argument has been presented relative to assignments of error numbers three and eight, and they are considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).

Assignment No. 1
By this assignment, defendant argues that the trial court erred in denying defendant's motion to quash the petit jury on the grounds that his due process rights were violated by statutory provisions permitting less than a unanimous vote by a jury of only six persons.
On April 17, 1979, the United States Supreme Court in Burch v. Louisiana, ___ U.S.___, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), held:
". . . [W]e believe that conviction by a nonunanimous six-member jury in a state criminal trial for a nonpetty offense deprives an accused of his constitutional right to trial by jury."
*748 In holding unconstitutional that portion of Article 1, § 17 of the Louisiana Constitution of 1974 which provides "[a] case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be before a jury of six persons, five of whom must concur to render a verdict," the Court reasoned:
"We thus have held that the Constitution permits juries of less than 12 members, but that it requires at least six. [Citations omitted] And we have approved the use of certain nonunanimous verdicts in cases involving 12-person juries. [Citations omitted] . . . But having already departed from the strictly historical requirements of jury trial, it is inevitable that lines must be drawn somewhere if the substance of the jury trial right is to be preserved. . . .
. . . . .
". . . [M]uch the same reasons that led us in Ballew [Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234] to decide that use of a five-member jury threatened the fairness of the proceeding and the proper role of the jury, lead us to conclude now that conviction for a nonpetty offense by only five members of a six-person jury presents a similar threat to preservation of the substance of the jury trial guarantee and justifies our requiring verdicts rendered by six-person juries to be unanimous.. . ."
The question presented in this assignment is whether Burch, supra, is to be applied retroactively. We think not.
Our review of decisions by the United States Supreme Court in other closely related areas leads us to the conclusion that the rule of Burch, supra, should not be applied retroactively to juries empaneled prior to the date of the Burch decision. See Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); State v. Robinson, 361 So.2d 864 (La.1978).
Since at the time of the commission of the instant offense and the defendant's conviction, Louisiana law authorized trial by jury composed of six persons, five of whom were required to concur in order to render a verdict in cases where the punishment may be confinement at hard labor or confinement without hard labor for more than six months, Article 1, § 17 of the Louisiana Constitution of 1974, defendant's conviction by such a jury is valid.
This assignment is, therefore, without merit.

Assignment No. 2
By this assignment, defendant argues that the trial court erred in denying his motion in limine to prevent the State from cross-examining the defendant regarding the details of defendant's convictions for impeachment purposes and in permitting the State to do so during trial.
During the trial, the defendant took the stand and testified in his own behalf. On direct-examination, defendant was questioned about prior convictions. He related that he had four or five prior convictions, including burglary, theft, simple escape and trespass, and at the time of trial was on probation for attempted simple burglary. On cross-examination, the following exchange took place between the prosecuting attorney and the defendant:
Q. Mr. Brown, you said you've been convicted of a couple of theft charges; is that right?
A. Yes.
Q. And I want to refer you to a charge from the 19th day of August, 1972, which charges you with attempt to commit simple burglary of a building and structure at 1206 Dryades Street. Do you recall being charged with that?
A. Yes, I do.
Q. The District Attorney in that case allowed you to plead guilty to a theft of a hundred and one dollars, is that correct?
*749 BY THE WITNESS:
Yes, because they was supposed to have come picked me up around the corner of the place. They had nine people out there. They come and picked me out the whole crowd.
Q. In other words, you had been charged with attempted burglary but they reduced the charge and let you plead to attempted theft?
A. Yes.
Q. Were you also convicted for receiving stolen property, one camera?
A. Yes.
Q. And I think you did say that you pled guilty to simple escape, is that right?
A. Yes.
Q. From the New Orleans Police Department; is that correct?
A. Huh?
Q. That was a simple escape from the custody of the New Orleans Police Department?
A. No, that wasn't in the custody.
Q. That wasn't?
A. No.
Q. Are you sure about that?
A. Yes.
Q. Didn't you plead guilty to willfully and unlawfully departing from the lawful custody of the Police Department of the City of New Orleans?
A. I pleaded guilty to
Q. And from a place where you were lawfully detained by the said Police Department?
A. I pleaded guilty to simple escape, not from no police custody.
Q. And you also have been convicted of criminal trespass, is that correct?
A. Um-hum.
Q. Now, weren't you also charged on the 7th day of February, 1974
. . . . .
Q. Weren't you charged on the 7th of February, 1974, of a simple burglary of the building and structure at 1423 Carondelet Street, Wilson's Auto Repair Shop?
A. Yes.
[Q.] And didn't the District Attorney let you . . . plead to a felony theft in that case?
A. The D. A. put me down, but the man dropped the charges and they had no case.
Q. They had no case but you pled guilty to it anyway?
A. Yes, I ain't had no choice.
Q. And you were multiple billed on that, weren't you?
A. No, I wasn't.
. . . . .
Q. You're sure you weren't
A. Yes, I'm sure.
Q. Do you remember what kind of sentence you got for that theft?
A. Eighteen months.
Q. Weren't you also charged on the 14th day of June, 1977 with attempting to commit simple burglary of an automobile belonging to Leroy White, with the intent to commit a theft therein?
A. I was charged with attempt simple burglary.
Q. You pled guilty to that, right?
A. Yes. I got a five year probation.
Q. And you also were convicted at one time in the past of being a multiple offender; is that correct?
. . . . .
BY THE WITNESS:
No, I wasn't.
. . . . .
Q. Did you plead guilty to being a multiple offender, after you were convicted on the attempted burglary for the automobile?
A. No.
Q. Mr. Brown, I'm going to show you what I'm going to mark for identification purposes as State's Exhibit 9, and ask you to look at this document. Is that your name?
A. Yes.
Q. Does that say "attempted simple burglary, a felony?"
A. Yes.

*750 Q. Does that say down here that you had also been convicted earlier in 1974 for theft of a hundred and one dollars?
A. Yes.
Q. Did you plead guilty to being the same person here that had been convicted of attempted simple burglary and the same person then?
A. Yes.
Q. So you were convicted of being a multiple offender; isn't that correct?
A. I don't know about that. I don't know nothing about the multiple offender law. I don't know what that means.
BY MR. HARPER:
I don't have any further questions.
In State v. Jackson, 307 So.2d 604 (La.1975), this Court reversed the prior jurisprudence and held that the prosecution, in impeaching the credibility of a defense witness, may not only establish prior convictions of the witness, but may also cross-examine the witness about the details of the prior convictions in order to show the "true nature" of the offenses. The Jackson holding has since been extended to defendants testifying in their own behalf. State v. Sykes, 364 So.2d 1293 (La.1978); State v. Thompson, 364 So.2d 908 (La.1978); State v. Carter, 363 So.2d 893 (La.1978); State v. Dupar, 353 So.2d 272 (La.1977); State v. Elzie, 351 So.2d 1174 (La.1977); State v. Chenier, 343 So.2d 177 (La.1977); State v. Jackson, 339 So.2d 730 (La.1976); State v. Williams, 339 So.2d 728 (La.1976); State v. Elam, 312 So.2d 318 (La.1975); State v. Jackson, 307 So.2d 604 (La.1975).
While reaffirming the principles set forth in Jackson, supra, and its progeny, we are, nevertheless, aware that a Jackson cross-examination is not without its limits. The extent to which the inquiry into past convictions can be permitted is dependent upon the facts of the particular case. The trial judge has great discretion in determining the depth and length of the inquiry. This discretion will not be disturbed absent a showing of abuse.
In the instant case, we believe the nature and scope of the questioning was well within the limits of Jackson and the trial judge did not abuse his discretion in overruling the defendant's motion in limine and contemporaneous objections. This assignment is, therefore, without merit.

Other Assignments
We have carefully reviewed assignments of error numbers 4, 5, 6, 9 and 10. We find that none of these assignments of error present reversible error, nor do any involve legal issues not governed by clearly established principles of law. We find these assignments to be without merit.

DECREE
Accordingly, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
TATE and DENNIS, JJ., concur for reasons assigned by CALOGERO, J.
CALOGERO, Justice, concurring.
I again express my disagreement with the holdings of State v. Jackson, 307 So.2d 604 (La.1975) and its progeny, which approve cross-examination of a testifying defendant concerning the details of prior convictions. See my dissent in State v. Chenier, 343 So.2d 177 (La.1977). However, because a majority of the Court presently adheres to the view that this cross-examination is permissible, I respectfully concur.