377 So.2d 96 (1979)
STATE of Louisiana
v.
Clyde SHELTON.
No. 64789.
Supreme Court of Louisiana.
November 12, 1979.
*98 C. Sherburne Sentell, Jr., Minden, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty., George Meadors, Asst. Dist. Atty., for plaintiff-appellee.
LANDRY, Justice Ad Hoc.
Clyde Shelton was charged by bill of information with simple kidnapping of Jennifer Lee Deaton on June 3, 1978. La.R.S. 14:45. By a jury vote of five to one he was convicted of the offense and sentenced to maximum imprisonment at hard labor for five years. In seeking reversal he alleges eleven assignments of error.
The testimony of the nine major witnesses who testified at the trial is conflicting as to what transpired on the night of the alleged offense. Witnesses for the prosecution were all white. All defense witnesses were black. Five of the state's witnesses were having a small party in a trailer house situated on Lake Claiborne in Claiborne Parish. Howard Hartsuff, one of the party decided to go into town for cigarettes and more alcohol. He was accompanied by Jennifer Deaton and her stepsister, Linda Zeagler. At a gas station they encountered defendant and four other young blacks seated in an automobile. Hartsuff, who knew defendant, invited defendant to the party at the trailer. While the record is not clear as to whether all five were invited, defendant and the other four came to the party. The party continued for approximately five hours, the assembled group engaging in drinking alcohol and smoking marijuana. As the party progressed two of defendant's friends left and it was eventually suggested that defendant and his two remaining friends Charles Fisher and Clarence Walker also leave. Defendant, Fisher and Walker, left but returned in a short time stating that their car had run out of gas. Hartsuff and Ms. Deaton offered to drive defendant and his two friends to Minden to get gasoline. The group left in a car with Hartsuff driving, Ms. Deaton seated beside him on the front seat, and defendant and his two companions occupying the rear seat. Enroute to Minden, one of defendant's companions asked Hartsuff to turn down a side road (known as the dumpyard road) stating that he knew someone down the road who might help them. Hartsuff drove down the road some distance and was told to stop. After stopping the vehicle Hartsuff and the three blacks exited the vehicle. Ms. Deaton remained in the car. While outside the vehicle one of the blacks told Hartsuff that they were "going to get some of that girl." Hartsuff objected and reentered the car attempting to drive away. He was grabbed from the rear by defendant and forced from the vehicle by Clarence Walker. After being forced from the car he panicked and fled. According to Ms. Deaton, Walker then took the wheel of the car and defendant got in the front seat wedging her between them. She requested to be let out but her pleas were ignored and Walker and defendant proceeded about twenty miles into neighboring Webster Parish. Eventually the vehicle became mired on a dirt road approximately twenty miles away and Ms. Deaton escaped from defendant and his companions. The state maintains the kidnapping occurred when Walker and defendant wedged Ms. Deaton between them on the front seat of the vehicle and drove off with her against her will. According to the State defendant became a principal because he aided and abetted in the kidnapping.
The record reflects that Walker was convicted in Webster Parish for rape of Ms. Deaton, in a trial which preceded trial of this matter. Briefly stated the defense is premised on the contention that Ms. Deaton voluntarily went along on the ride; that she had voluntarily had intercourse with one of the blacks, Billy Ray Allen while still at the *99 party; that she was seen early the next morning walking along a public highway with the three blacks and yelled rape to protect her honor.

Assignments 2 and 6.
These assignments allege error in the admission of hearsay testimony. It is urged that Hartsuff's testimony that defendant stated while outside the vehicle, that "he was going to get some, you know, he was going to rape the girl, rape Jennifer..." was prejudicial hearsay, inadmissible not only because it came under no exception to the general hearsay rule, but also because of lack of noticed required by La.C.Cr.P. Article 768.
The testimony was properly admitted as part of the res gestae as defined in La.R.S. 15:447, because it was made by a participant. See also State v. Qualls, 353 So.2d 978 (La.1978). As part of the res gestae, La.C.Cr.P. Article 768 notice is not required. The notice required by Article 768, supra applies only to confessions or inculpatory statements made subsequent to commission of a crime. State v. Labostrie, 358 So.2d 1243 (La.1978).
These assignments lack merit.

Assignment Number 3.
It is urged that the trial court erroneously excluded evidence relevant to the issue of consent of the prosecuting witness. La.R.S. 14:45 provides, inter alia, that simple kidnapping is the intentional and forcible seizing and carrying a person from one place to another without his consent.
To establish consent, defendant called Billy Ray Allen, a companion who had left the party early and was not present at the time of the alleged kidnapping. Out of the presence of the jury, the defense argued that Allen's testimony that Ms. Deaton had had voluntary sex with him at the party before he left, was relevant to the issue of her consent to go along in the car. The state objected and the testimony was excluded as irrelevant.
The testimony was properly excluded. Assuming Ms. Deaton had had voluntary sex with Allen before he left the party and conceding that she voluntarily left with Hartsuff and the others upon leaving the party, it is totally irrelevant to the issue of her consent to voluntarily remain with defendant and his companion after Hartsuff left her stranded.
This assignment is without merit.

Assignment Number 4.
Error is urged in the trial court's allowing the state to question a defense witness, Clarence Walker, concerning his conviction for crime (rape), which had not become final.
It is conceded that Walker had been convicted earlier of rape of Ms. Deaton but had not been sentenced at the time he testified. On direct examination, defense counsel brought out Walker's prior conviction for simple burglary and theft, but made no mention of the rape conviction. On cross-examination, over defense objection, the state was allowed to question the witness about the rape conviction.
The objection was properly overruled. La.R.S. 15:495 permits evidence of prior conviction of crime to impeach the credibility of a witness. Such evidence is admissible even though an appeal of the conviction is pending. State v. Rhodes, 351 So.2d 103 (La.1977).
This assignment lacks merit.

Assignment Number 5.
Error is alleged because the trial court allowed the state to show that the rape for which defense witness Clarence Walker, was a conviction for rape of the prosecuting witness Ms. Deaton, which offense was committed in neighboring Webster Parish.
It is settled law that a party calling a witness vouches for his credibility which may be impeached by showing prior conviction of crime. La.R.S. 5:495; State v. Joseph, 341 So.2d 861 (La.1977).
When evidence of prior criminal conviction is offered for impeachment of a witness, the details of the crime may be brought out to show the true nature of the offense. State v. Brown, 371 So.2d 746 (La.1979).
*100 Ordinarily, this assignment would lack merit because the rape, being part of the res gestae of the charge of simple kidnapping, would be admissible throughout the trial as relevant to the question of criminal intent. State v. Dupre, 369 So.2d 1303 (La. 1979).
In this instance, however, it is argued that the state by introducing the testimony, breached a pre-trial agreement that no evidence of the rape would be introduced. The state concedes such an agreement of the details of which are not made entirely clear by the record.
The state justifies the breach, on the ground that the testimony of the defense witness Clarence Walker, who drove the car from the dumpground site to adjoining Webster Parish, was to the effect that no force was used nor were any threats made to restrain Ms. Deaton in the vehicle when he drove away. The state notes Walker's further testimony that Ms. Deaton agreed to remain in the car to proceed to Minden to purchase additional marijuana after Hartsuff fled the scene. The state points out that it kept the agreement by not presenting such evidence in the presentation of its case in chief, but maintained that it was necessary to bring out Walker's rape conviction to counter the effect of his testimony that the trip from Claiborne to Webster Parish was not an abduction. The state contends that Walker's testimony characterized the trip as a "joy ride" and that the jury might have believed Walker's "rose colored version of the incident".
The record discloses that Walker indeed testified that Ms. Deaton voluntarily remained in the vehicle after Hartsuff's departure from the scene and that no force or threats were employed to make Hartsuff leave.
In dealing with this issue the Federal courts consider the extent to which the defense is prejudiced by such a breach. In United States v. Scanland, 495 F.2d 1104 (5th Cir. 1974), defendant was charged with two counts of passing forged twenty dollar bills. Although aware of a third violation, the government did not charge defendant on the third count because the store clerk involved had declined to accept the proffered bogus bill and accepted a genuine bill. Since the government did not have the proffered bill it agreed in pre-trial conference, not to rely on prior acts or convictions of similar nature for proof of knowledge or intent. At trial, however, the storekeeper was called to counter the defense of lack of intent based on defendant's contention that he came into possession of the bill innocently. Defendant's conviction was reversed despite the finding that the prosecution had not acted in bad faith due to lack of communication between government pre-trial counsel and the prosecuting attorney, and also despite defendant having received full notice of the existence of the witness called.
In so concluding, Scanland noted:
"When the Government and the accused voluntarily enter into pre-trial agreements we believe the parties are entitled to rely on such agreements in the preparation of their case. Subsequent developments, of course, may make it necessary for either or both parties to be released from their Omnibus hearing agreements. We expressly refuse to diminish the sound discretion vested in the district court to grant such releases.5 Even minimal standards of fairness, however, would require a sound analysis of the attempted deviation. The court should inquire as to whether reasonable notice was given to the adversary of the change in strategy. Furthermore, the potential for prejudice should be balanced against the reason for the release."
In this instance it is clear that the defense had knowledge of Walker's conviction for rape of Ms. Deaton. Nevertheless, the admission of this evidence was extremely prejudicial and constitutes reversible error. The subsequent rape of Ms. Deaton in Webster Parish is not totally irreconcilable with the defense that she voluntarily remained in the vehicle after Hartsuff's departure. It could be that she did voluntarily remain as testified to by Walker and defendant and that Walker subsequently conceived the idea of raping her. If so, defendant would *101 not be guilty of the offense of simple kidnapping. Whether she did or not remain voluntarily was a matter for the jury to determine in the light of all relevant evidence in this crucial issue. On learning that Ms. Deaton had been raped and that Walker was convicted of the offense, the jury could well have concluded that if Ms. Deaton were raped she was probably kidnapped in view of Hartsuff's testimony that either defendant or Walker stated to him that they were going to "get some" of Ms. Deaton. The state conceded that this was indeed the purpose of placing the rape information before the jury, in addition to impeaching Walker.
Walker's testimony related only to the victim's consent to remaining in the vehicle, not to her consent to what may have later occurred in Webster Parish. Lack of Ms. Deaton's consent to subsequent intercourse with Walker was only vaguely relevant to her consent to the automobile ride. Defendant's plea of not guilty placed the state on notice that the victim's alleged lack of consent would be an issue, otherwise defense of the charge would have been impossible.
We note also that the defense attempt to question Walker about the details of the rape (presumably for the purpose of showing that Ms. Deaton voluntarily had intercourse with Walker), was denied by the trial court on the ground that this was a minor aspect of the conviction into which the defense could not inquire.
Federal jurisprudence holds that the guilty plea of a co-defendant is admissible when the co-defendant attempts to exonerate himself and the defendant in a subsequent trial, on the ground of a prior inconsistent statement. In this instance a logical inconsistency does not necessarily result from Walker's rape conviction and his testimony that Ms. Deaton agreed to remain in the vehicle. Presentation of this evidence was not entirely for impeachment purposes; it was also offered as substantive evidence of defendant's guilt. Under the circumstances, the jury may well have inferred that defendant was a principal in Walker's rape of Ms. Deaton, a matter highly prejudicial to defendant's position in the kidnapping charge.
The Federal jurisprudence recognizes that there may be instances where compelling reasons justify releasing the prosecution from an agreement not to present certain evidence. We find, however, no such compelling reason in this instance. Therefore, reversal is in order. United States v. Fleetwood, 528 F.2d 528 (5th Cir. 1976); United States v. King, 505 F.2d 602 (5th Cir. 1974).
This assignment warrants reversal.

Assignments 7 and 8.
These assignments relate to the voir dire examination of a prospective juror, Mrs. White. It is contended that the defense, having exhausted its peremptory challenges, was entitled to challenge Mrs. White for cause because she indicated she would place undue weight on the testimony of police officers who might testify during trial. Her examination, however, discloses that she would have made an impartial juror. Defendant also complains that the trial court erroneously observed that he considered "normal" the statement of Mrs. White that she would probably believe an officer but would want to hear the testimony before believing it or not.
These assignments lack merit.

Assignments 1 and 11.
Since these assignments are patently without merit, we see no reason to discuss them.

Assignments 9 and 10.
These assignments charge error in granting the state's challenges for cause against prospective jurors John Alvin Jenkins and Ms. Dorothy Monroe. The state used five of its six peremptory challenges. Defendant contends that the erroneous grant of these two challenges for cause resulted in the state being allowed more peremptory challenges than permitted by law.
On examination by the state, Mr. Jenkins testified that he had known defendant for about 18 years, but had never visited in *102 defendant's home, nor had defendant visited him. He admitted having seen defendant occasionally at the homes of mutual friends. For some years prior to trial he had not spoken with defendant except to exchange "hellos". He admitted having a preconceived notion about the case that would be hard to put out of his mind.
On interrogation by the defense, Jenkins stated he did not know the meaning of a preconceived notion. He added that his acquaintance with defendant would not influence his decision and that if selected on the jury he would decide the case fairly. Over defense objection the state was granted a challenge for cause.
When examined by the state, Ms. Monroe testified that she had known defendant casually for about 10 years and had met defendant personally on only one occasion. She admitted being a close friend of defendant's sister, Nancy and that she and Nancy had visited in each other's homes. The state challenged for cause and the defense requested opportunity to question her regarding her acquaintance with defendant's sister. The court declined to permit any defense examination and summarily discharged her for cause.
A prospective juror may be challenged for cause because his friendship with the defendant is such that it is reasonable to conclude that the relationship would influence the juror in arriving at a verdict. La. C.Cr.P. Article 797(3).
In ruling on a challenge for cause, the trial judge has wide discretion, the exercise of which will not be disturbed on appeal except on a showing of an abuse thereof. State v. Drew, 360 So.2d 500 (La.1978). Generally, a ruling of this nature involves refusal of such a challenge rather than granting one. Nevertheless, the test in either case is the same.
That a prospective juror knows the defendant does not per se constitute ground for challenge for cause. La.C.Cr.P. Article 797(2). There must be a showing that the relationship would influence the juror's ability to arrive at an impartial verdict. State v. Clark, 350 So.2d 208 (La.1976).
A prospective juror's statement that he will be fair and impartial is not binding on the trial court. If the revealed details of the relationship are such that bias or prejudice may be reasonably implied a juror may be properly refused for cause. State v. Monroe, 366 So.2d 1345 (La.1978).
No actual bias was shown on Jenkins' part. Under the revealed circumstances of the acquaintanceship involved, it is not reasonable to imply that Jenkins would not have been an impartial juror. The trial court erred in holding otherwise.
The error in granting the challenge of Ms. Monroe is more grievous than that involved with Jenkins. Not only was there a woeful lack of evidence to support an implication of bias, the error was compounded by the court's refusal to permit the defense any examination whatsoever.
The record indicates that the trial judge was intent upon seating a jury composed of members who knew neither the defendant, the prosecuting witness, the prosecuting attorney, nor any of the police officers who might testify as witnesses in the trial. As laudable as such intent may be, it appears, nevertheless, that the trial court was overzealous in this regard. The law does not require a jury to be composed of individuals who are totally unacquainted with the defendant, the prosecuting witness, the prosecuting attorney and the witnesses who may testify at the trial, it requires only that jurors be fair and unbiased.
A ruling which grants the state more peremptory challenges than allowed by law, constitutes reversible error. State v. Willis, 364 So.2d 961 (La.1978). In granting the two unwarranted challenges for cause, the state was allowed more than its allotted number of peremptory challenges.
This assignment is meritorious and warrants reversal.
The conviction and sentence are reversed and set aside and this matter remanded to the district court.
MARCUS, J., dissents and assigns reasons.
*103 MARCUS, Justice (dissenting).
The pretrial agreement that no evidence of the rape would be introduced does not appear in the record; however, the state does concede in brief to this court that such an agreement did exist. During Walker's testimony, defendant objected to the impeachment of his credibility by his prior conviction of rape on the grounds that: the question as to his prior conviction was highly prejudicial; the conviction was not yet final; the state had not mentioned the rape in its opening statement; and it was impermissible to go into the facts of a particular conviction. Defendant did not make known to the trial judge that evidence of the witness' prior conviction should be excluded because of a pretrial agreement with the state.
A new basis for an objection cannot be raised for the first time on appeal. La.Code Crim.P. art. 841; State v. Drew, 360 So.2d 500 (La.1978); State v. Robertson, 358 So.2d 931 (La.1978). Hence, we should not consider on appeal the objection based on the ground asserted. Moreover, I do not consider that the trial judge abused his much discretion in sustaining the state's challenges for cause against prospective jurors Jenkins and Monroe.
Accordingly, I respectfully dissent.