759 So.2d 1052 (2000)
STATE of Louisiana, Appellee,
v.
Willie Calvin JOHNSON, Appellant.
No. 33,174-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*1054 Bobby Culpepper, Jonesboro, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Robert W. Levy, District Attorney, A. Shawn Alford, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, Judge.
The defendant, Willie C. Johnson, was charged by grand jury indictment with aggravated rape, a violation of LSA-R.S. 14:42. After a jury trial, the defendant was found guilty as charged. The trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant's motions for post-verdict judgment of acquittal and new trial were denied. The defendant appeals his conviction. For the following reasons, we affirm.

FACTS
On December 23, 1996, Frances Matlock was cooking in her home located in Dubach, Lincoln Parish, Louisiana. In the early evening, Matlock, who was 69 years old, went outside to store several pies in a utility room near the carport. As Matlock opened the utility room door and began to enter, she was grabbed from behind by an individual, later identified as the defendant, who placed his bare hands over her eyes and mouth. Matlock screamed and tried to escape, hoping to get to the road where she might be seen or heard by a neighbor, but she could not free herself from the defendant's grasp. During the scuffle, Matlock and the defendant approached a parked automobile and she grabbed the nearest door handle. As she turned away from defendant, he stumbled and leaned his hand against the vehicle to keep from falling. Matlock again tried to get away, but she was overpowered by the defendant, who pushed her into the residence.
Inside the dining room, defendant shoved Matlock, causing her to fall to the floor and knocking her eyeglasses off of her face. According to Matlock, the defendant said "I'm gonna rape you and I'm gonna kill you." As Matlock tried to stand up, she was tripped by defendant and again fell to the floor. After getting up, Matlock reached for a metal rod she kept near the door for protection, but the defendant took it away. He shoved Matlock *1055 into the bedroom of her son, who was not at home. The defendant then removed Matlock's underwear, pushed her onto the bed and raped her, causing vaginal penetration. After the attack, the defendant demanded money. Matlock replied that she did not have any cash. The defendant looked through Matlock's billfold before leaving the house approximately 20 to 30 minutes after the attack began.
After the defendant left, Matlock telephoned 911 to report the crime. Sergeant Bill Moss of the Dubach Police Department responded to the call at approximately 7:30 p.m. Sergeant Moss secured the scene and remained with the victim until the investigators arrived. Moss stated that Matlock described her assailant as a black male, approximately five feet eight inches in height and wearing a black sweater and dark pants.
Detective Thomas Kay of the Lincoln Parish Sheriff's office arrived at the scene a short time later. Detective Kay observed that the victim seemed depressed and that it was difficult for her to speak about the event. Kay recorded Matlock's statement about the attack. At one point, Matlock stated that her attacker "knew we reported the Johnson boy." Several months prior to the rape, Matlock had complained to the police that the defendant, a friend of her son, was harassing her by calling her home and knocking on her door numerous times each day seeking money. Detective Kay had spoken with the defendant and told him not to go to the Matlock residence anymore. After the recording was completed, Kay asked about the defendant, and Matlock stated that the attacker's voice sounded like the defendant, but that she had not seen his face.
On the night of the rape, Kay lifted latent palm prints from the front driver's side of Matlock's automobile. He was only able to lift partial prints from the metal rod found at the scene, and was unable to lift any latent prints from the point of entry to the house. Detective Kay spoke with the defendant the night of the rape. After being advised of his Miranda rights, the defendant agreed to speak with Kay, who questioned the defendant about where he had been earlier that night. The defendant stated that he had been to different houses the night of the rape, and seen Chester Wayne Richards, Wilbert Jenkins and Earnest Sanders, but denied having gone to the Matlock home after he was told not to go there anymore.
On January 3, 1997, Detective Kay conducted a photographic line-up which included a photograph of the defendant. Kay showed the line-up to Matlock, who did not identify anyone as the rapist. The photo line-up contained Kay's notation, "1-3-97 2:36 p.m., 2:37 p.m. No ID." Kay then asked about picture number three, the defendant, and Matlock indicated that he was the right size, that her attacker had sounded like defendant and she told Kay, "I believe you've got the right man."
Kay and Deputy Wesley obtained body fluid samples from the defendant and transported them to the crime laboratory. After the DNA test results were reported, the defendant was arrested and charged with aggravated rape. Following the trial, the jury found the defendant guilty as charged. The trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence and denied the defendant's motions for post-verdict judgment of acquittal and new trial. The defendant appeals his conviction. Although originally asserting nine assignments of error, defendant's brief did not address two assignments, which alleged that the state failed to timely try defendant and that the court erred in denying his supplemental new trial motion. Assignments which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978).

DISCUSSION

Challenges for Cause
The defendant contends the trial court erred in granting the state's challenges for *1056 cause to excuse three prospective jurors. Defendant argues that the court should have denied the challenges because each individual was sufficiently rehabilitated by subsequent questioning.
The state or the defendant may challenge a juror for cause on the grounds that the juror is not impartial or will not accept the law as given to him by the court. LSA-C.Cr.P. art. 797. The accused does not have grounds to complain about the granting of the state's challenge to a potential juror for cause, unless the effect of the ruling is to allow the state to exercise more peremptory challenges than is allowed by law. State v. Joe, 28,198 (La.App.2d Cir.7/26/96), 678 So.2d 586, writ denied, 97-0559 (La.10/31/97), 703 So.2d 16. Improperly allowing the state challenges for cause, effectively granting the state additional peremptory challenges to which it was not entitled, warrants a new trial. State v. Willis, 364 So.2d 961 (La.1978).
When a prospective juror expresses a predisposition as to the outcome of a trial or to a particular sentence, a challenge for cause should be granted. However, if after subsequent questioning the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied. When assessing whether a challenge for cause should be granted, the trial judge must look at the juror's responses during his entire testimony, not just isolated answers. State v. Lee, 559 So.2d 1310 (La.1990).
The trial judge must grant a cause challenge even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may reasonably be inferred. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). A trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683; State v. Ellis, 28,282 (La.App.2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521.
The record shows the following questions and answers with regard to prospective juror Phyllis Sampson:
By Ms. Alford, assistant district attorney:
Question: Okay, Ms. Sampson, you think you could do that if I prove to you beyond a reasonable doubt that this man is guilty of Aggravated Rape, could you vote guilty knowing that you were sending him to prison for the rest of his life?
Answer: (No audible answer)
Court reporter: Speak up.
Answer: No.
Question: Do you typically have a problem with sitting in judgment of others?
Answer: Yes.
Question: Is there anything I could do or is there any evidence that I could present to you that would be able to convince you to vote guilty knowing what the sentence would be?
Answer: No.
* * *
Question: Okay. Ms. Sampson and Ms. Wilson?
Answer: I cannot send a person to prison for life.
Question: I understand.
Answer: I can't either.
(Emphasis added.)
By Mr. Culpepper, defense attorney:
Question: ... Do any of you have problems with circumstantial evidence if it was strong enough and if the Judge tells you under the law you can convict on circumstantial evidence. Raise your hand if we need to discuss this circumstantial evidence further with anyone. Ms. Sampson, you are *1057 frowning. Do you have problems withyou hadn't raised your hand, do youdo you have problems with-with that if the Judge tells you that this is the law and in this case you can con convict Willie Johnson, Jr. on circumstantial evidence if it is strong enough? Then I'm assuming that you would do what the Judge says do, follow her instructions, would you not? (Emphasis added.)
Answer: Would follow her instructions, yes.
* * *
(After general instructions about being fair, Mr. Culpepper continued.)
Question: ... Ms. Sampson, is that right? Okay, now whatwhat is it that keeps you from being fair?
Answer: Well I would be thinking about the life sentence.
* * *
Question: ... let's assume after hearing all the evidence, you were convinced beyond a reasonable doubt that Willie Johnson, Jr. was guilty of Aggravated Rape and the time came to vote guilty, or not guilty, I'm assuming that you would have to vote guilty, would you not?
Answer: I would but I wouldn't want to have to-
* * *
Question: Well, yeah, but see there's two different things, you know.... Most people, you know, will say well, I don't want do something to give a life sentence.
* * *
... we've got to know would you do your duty if you were convinced beyond a reasonable doubt that he was guilty of Aggravated Rape? You're not gonna vote not guilty under those circumstances, are you?
Answer: No.
Question: So what you're saying I would vote guilty, I just would rather not vote guilty is what you're saying?
Answer: Exactly.
The state challenged Sampson for cause based on her statement indicating that regardless of the evidence, she would not and could not render a guilty verdict knowing the sentence would be life imprisonment. The trial court, in granting the challenge, noted that Sampson not only "expressed problems with circumstantial evidence.... more importantly she just flat out said she wouldn't do it. She wouldn't do the sentence." The trial court noted that although Sampson told the defense attorney that she would do the right thing, she had stated firmly to the prosecution that she could not send anyone to prison for life.
The following questions and answers are contained in the record regarding prospective juror Deitrich Wilson:
By Ms. Alford:
Question: Is there anything I could do or is there any evidence that I could present to you that would be able to convince you to vote guilty knowing what the sentence would be?
* * *
Question: Ms. Wilson, what about you? That's athat's a tough question, isn't it, tough call?
Answer: Yes.
Question: Do you think under any circumstances you would be able to vote guilty in this case knowing that your vote would be at least part of a jury verdict that would send this man to prison for the rest of his life.
Answer: I couldn't vote to send him to prison for life.
Question: Regardless of whatever evidence I presented oror how strongly the case was proved.
Answer: It depend. [sic] You know, but I don't think I could send someone to prison for life for Aggravated Rape or Rape because they're gonna stay for life, I mean like somewhere there's gotta be some forgiveness. I just wouldn't wanna send somebody to prison for life. If they don't keep *1058 people that deal drugs in prison for life, why should you keep him in there for life?
* * * *
Question: If I were able to prove to you in other ways that he had committed this offense, would you be able to vote to convict despite the fact that Ms. Matlock was unable to say that's him?
* * *
Question: Ms. Wilson, what about you?
Answer: I would find it hard to believe.
The defense attorney did not directly ask Wilson any rehabilitation questions.
The state challenged Wilson for cause on the basis of her statements that she could not send someone to prison for life, especially on a rape charge, since drug dealers are not sent to prison for life. The trial court granted the state's challenge for cause, finding that Wilson's testimony as a whole showed that Wilson would not want to vote guilty to subject someone to life imprisonment, and that she would also have a hard time voting guilty without a positive victim identification.
The record includes the following questions and answers of prospective juror Darren Crawford:
By Ms. Alford:
Question: ... Would you be able to return a guilty verdict knowing knowing that it's gonna send him down the road forever?
* * *
Question: And, Mr. Crawford?
Answer: (No answer).
Question: That's okay, it really is. It's just something thatthat we have to know because of the charge and the case. ....Is there anything that I can do, is there any evidence that I could present to you that would be so overwhelming or so compelling that you would be able to vote to send this man to prison for the rest of his life?
Answer: No.
By Mr. Culpepper:
Question: Okay, Mr. Crawford, you also had some problem with this and do you understand, you know, where I'm coming from on this. Isyou're not gonna sentence anybody to anything. You know all you are called upon to is vote guilty of-whether he's guilty of Aggravated Rape or attempted or simple rape, forcible rape.
* * *
... you are convinced beyond the reasonable doubt that Willie Johnson, Jr. is guilty of Aggravated Rape, you'd have to vote guilty, would you not?
Answer: It's hard to say.
* * * *
Question: And you'll say well I don't want to vote guilty but you're not gonnayou're not gonna do the wrong thing just because of that, are you?
Answer: No.
In its challenge for cause, the state argued that Crawford's statements indicated that whatever the evidence, he could not vote to send someone to prison for life. In granting the challenge for cause, the trial court noted that Crawford was adamant and that even though Crawford reluctantly told the defense attorney he would do his duty, he indicated "It's hard to say" that he would have to vote guilty.
After reviewing the prospective jurors' responses as a whole, we conclude that their inability to render judgment according to law may reasonably be inferred from their testimony. Thus, we cannot say that the trial court abused its discretion in granting the state's challenges for cause with regard to prospective jurors Sampson, Wilson and Crawford. The assignment of error lacks merit.

Photographic Line-up
The defendant contends the trial court erred in denying his motion for mistrial. Defendant argues that the photographic line-up shown to the victim was impermissibly suggestive and created a substantial likelihood of misidentification which deprived defendant of a fair trial.
*1059 LSA-C.Cr.P. art. 775 provides for a mistrial when there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Hattaway, 28,060 (La.App.2d Cir.5/8/96), 674 So.2d 380, writ denied, 96-1900 (La.1/10/97), 685 So.2d 141. The decision to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. State v. Hattaway, supra.
A defendant attempting to suppress an identification must prove both that the procedure used was unduly suggestive and that there is a substantial likelihood of irreparable misidentification. State v. Savage, 621 So.2d 641 (La.App. 2d Cir.1993), writ denied, 93-2850 (La.9/2/94), 642 So.2d 1282. A line-up is unduly suggestive if the procedure focuses attention on the defendant. Even if the procedure used was suggestive, an identification will be admitted if, under the totality of the circumstances, the identification is found to be reliable. State v. Savage, supra.
The factors considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Here, the photographic line-up could be considered a suggestive procedure, since Detective Kay specifically asked the victim about defendant's picture after she failed to make an identification. At that point, Matlock stated that the attacker's voice sounded like defendant and that he was the right man. Despite the suggestive procedure, an identification will not be suppressed unless defendant establishes a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, supra.
The defendant asserts that Matlock's reported identification of him as the perpetrator is not reliable because she was not wearing her eyeglasses during the attack, she said that her only chance to see the attacker was while he looked through her billfold, she did not give a complete physical description and she did not pick out defendant's photograph from the lineup. However, the evidence shows that Matlock was able to identify the defendant as the assailant primarily by his voice. Matlock testified that she "knew from the first" the identity of her attacker because she recognized defendant's voice as a result of his numerous prior telephone calls to her home. The victim stated that she did not tell the police that defendant was the rapist or point out his photograph because she was frightened by his threat to kill her.
In assessing the reliability of the identification, we apply the Manson factors. First, we note the victim's opportunity to hear the assailant's voice when he told her to be quiet, that he was going to kill her, that he wanted money and that he knew she had reported Willie Johnson to the police. Second, Matlock paid close attention to the criminal's voice, as illustrated by her ability after the attack and at trial, to repeat the numerous statements he had made. Concerning the victim's level of certainty at the identification, Matlock twice stated to Detective Kay that the attacker's voice sounded like the defendant, and at trial she affirmatively identified the defendant as the perpetrator. In addition, the time between the crime and the voice identification was fairly brief. On the night of the crime and after the photo line-up eleven days later, Matlock stated that the voice of the rapist sounded like that of the defendant.
*1060 Considering the foregoing factors, the evidence shows that Matlock's identification of the defendant was reliable, despite a suggestive line-up procedure. Thus, the defendant failed to demonstrate a substantial likelihood of irreparable misidentification. Consequently, we cannot say the trial court erred in allowing the identification testimony into evidence to be weighed by the jury. Having determined that Matlock's identification of defendant as the assailant was reliable, we conclude that defendant has not shown that he has suffered such substantial prejudice as to deprive him of a reasonable expectation of a fair trial. The assigned error lacks merit.

Sufficiency of the Evidence
The defendant contends the trial court erred in denying his motion for post-verdict judgment of acquittal. Defendant argues that the state failed to produce sufficient evidence to prove that he committed the offense.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (La.1992). This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
LSA-C.Cr.P. art. 821 provides that a post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. Article 821 manifests the intent to adopt the standard of Jackson v. Virginia as the proper degree of deference which both trial and appellate courts owe to the jury's verdict. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
LSA-R.S. 14:41 defines rape as the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent, and any sexual penetration, however slight, is sufficient to complete the crime. The offense of aggravated rape is a rape committed upon a person 65 years of age or older, or that is committed under any of the following circumstances: (1) The victim resisted to the utmost but the resistance was overcome by force; (2) the victim was prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution; (3) the victim was prevented from resisting because the offender was armed with a dangerous weapon; (4) the victim was under the age of 12; (5) two or more offenders participated in the act. LSA-R.S. 14:42; State v. Johnson, 94-0236 (La.App. 4th Cir.3/16/95), 652 So.2d 1061, writ denied, 95-1752 (La.2/21/97), 688 So.2d 524.
In the present case, the victim unambiguously testified that she did not consent to sexual intercourse with defendant. The testimony of Matlock and the physician who examined her after the attack established that there had been vaginal penetration. In addition, Matlock testified that she resisted the attack by trying to escape from the assailant's grasp, by holding on to the car door handle and by attempting to use a metal rod to protect herself. Despite her efforts, the victim was physically restrained and overpowered by the attacker, who used force to shove her into the house and throw her to the *1061 floor. The testimony also showed that the assailant obtained the metal rod and threatened to kill the victim.
The state presented evidence including the victim's in-court identification of defendant as the rapist, and the palm prints matching those of the defendant taken from the specific area of the automobile which the victim said was touched by her attacker on the night of the rape. The prosecution also introduced into evidence positive DNA test results showing that the defendant's DNA was present in the sperm sample taken from the victim's underwear. The lab analysis indicated that the probability of another individual having the identical combination of genetic markers as the defendant was one in twenty-two trillion.
As previously noted, the defendant disputes the victim's identification of him as unreliable because of her failure to give his name to the police or to pick him from the photographic line-up. Concerning the other evidence, defendant contends that his palm prints were left on Matlock's vehicle during one of his prior visits to the home to see her son, and that the presence of his DNA in the bedroom could be explained by his homosexual relationship with the victim's son. However, as pointed out by the state, the defendant could not offer a plausible explanation for the presence of his sperm in the victim's underwear.
The jury heard the competing views regarding the meaning of the evidence and weighed the credibility of the witnesses. Based upon this record, the jury could reasonably have found that the state negated any reasonable probability of misidentification. Viewing the evidence in a light most favorable to the prosecution, we conclude that rational jurors could have found that each of the essential elements of the crime of aggravated rape were proven beyond a reasonable doubt. Thus, the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal. The assignment of error lacks merit.

Motion in Arrest of Judgment
The defendant contends the trial court erred in denying his motion in arrest of judgment. Defendant argues that LSA-R.S. 14:42 is unconstitutional in that the crime of aggravated rape is defined on the basis of the age of the victim.
LSA-C.Cr.P. art. 859(2) provides that the court shall arrest the judgment when the offense charged is not punishable under a valid law. Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Flores, 27,736 (La. App.2d Cir.2/28/96), 669 So.2d 646; State v. Brown, 94-1290 (La.1/17/95), 648 So.2d 872. Courts should not reach or determine a constitutional issue unless, in the context of a particular case, resolution of the issue is necessary to decide the matter. Louisiana Associated Gen'l Contractors Inc., v. New Orleans Aviation Board, 97-0752 (La.10/31/97), 701 So.2d 130; State v. Simien, 95-1407 (La.App. 3rd Cir. 7/24/96), 677 So.2d 1138.
Initially, we note that the indictment charging the defendant with the offense of aggravated rape was not limited to proof of the victim's age. Thus, the state remained free to present evidence to prove commission of the offense under any provision of LSA-R.S. 14:42. In addition, the jury was instructed as to the elements of the entire statute. After reviewing the record, we conclude that the evidence is sufficient to prove that defendant committed aggravated rape of the victim, regardless of her age. The testimony shows that the elderly victim resisted the attack to the utmost by struggling to escape, but was physically overpowered by defendant, who shoved her into the house and twice knocked her to the floor. The victim was also prevented from resisting by the defendant's express threats that she would be killed and because defendant was armed with a dangerous weapon, the metal rod which he possessed during the crime. In light of the evidence presented, even if the language referring to the victim's age *1062 was excised from R.S. 14:42, this defendant could have been charged with and convicted of aggravated rape pursuant to the statute, requiring imposition of a life sentence without benefit of parole. Consequently, we do not reach the constitutionality issue raised by defendant. The assigned error lacks merit.

Discovery Responses
In two assignments of error, the defendant contends the trial court erred in denying the motion for mistrial. Defendant argues that he was prejudiced by the state's failure to inform the defense that he could be identified by the victim.
The discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. Discovery procedures enable the defendant to properly assess the strength of the state's case against him in order to prepare his defense. If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such prejudice may constitute reversible error. State v. Johnson, 604 So.2d 685 (La.App. 1st Cir.1992), writ denied, 610 So.2d 795 (La.1993); State v. Mitchell, 412 So.2d 1042 (La.1982). The articles regulating discovery do not specifically require the state to provide information concerning a witness's ability to identify the perpetrator, and a defendant has no general constitutional right to unlimited discovery in a criminal case. LSA-C.Cr.P. arts. 716-723; State v. Brossette, 93-1036 (La. App. 3rd Cir. 3/2/94), 634 So.2d 1309, writ denied, 94-0802 (La.6/24/94), 640 So.2d 1344.
In the present case, the state advised the defense counsel that the victim had not identified his client on the night of the crime and that a photo line-up had been presented to the victim, who did not identify the defendant's photograph. Defendant complains that he was not advised prior to trial that after the initial line-up, Detective Kay asked specifically about the defendant, and the victim responded that she thought he was the right man. However, during argument on the motion for mistrial, the prosecutor stated that she had provided the defense counsel with Detective Kay's handwritten notes indicating that the victim had said the attacker sounded like defendant, and receipt of the notes was not disputed. In addition, the record indicates that the state did not expect the victim to positively identify defendant as the assailant, as evidenced by the prosecutor's questioning of prospective jurors concerning their ability to find guilt despite the lack of such an identification.
The evidence demonstrates that prior to trial, the defense was provided with information indicating that although the victim had not given defendant's name to the police, she had suggested that the assailant's voice sounded like that of the defendant. Based on this record, we must conclude the defendant has failed to establish that the state's discovery responses caused such substantial prejudice as to deprive defendant of any reasonable expectation of a fair trial. Consequently, we cannot say the trial court erred in denying the motion for a mistrial. The assignments of error lack merit.

Motion for New Trial
The defendant contends the trial court erred in denying his motion for new trial. Defendant argues that the court's rulings regarding the state's juror challenges for cause, the photo line-up problems and the sufficiency of the evidence caused him prejudicial error and are grounds for a new trial.
LSA-C.Cr.P. art. 851 provides that a new trial shall be granted when the court's ruling on a written motion or an objection made during the proceedings shows prejudicial error. The trial court's decision concerning a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Quimby, 419 So.2d 951 (La.1982). The defendant addresses this assignment by adopting the arguments which are asserted elsewhere in his brief with respect to the above stated grounds for a new trial.
*1063 As previously discussed in this opinion, after reviewing the record we have determined that the trial court did not commit prejudicial error with its rulings regarding the prospective juror challenges and the admission of identification testimony, and that the evidence presented is sufficient to support the defendant's conviction for aggravated rape. Therefore, we cannot say the trial court abused its discretion in denying the defendant's motion for a new trial. The assignment of error lacks merit.
Pursuant to LSA-C.Cr.P. art. 920(2), we have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.