481 So.2d 667 (1985)
STATE of Louisiana
v.
Julius J. FEET.
No. KA 85 0610.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Writ Denied March 21, 1986.
*669 Steve Laiche and Joe Johnson, New Orleans, plaintiff and appelleeState of Louisiana.
Glynn T. Voisin and Paul E. Brown, Indigent Defenders Office, Houma, defendant and appellantJulius J. Feet.
Before CARTER, SAVOIE, and ALFORD, JJ.
ALFORD, Judge.
After being indicted by a grand jury, Julius J. Feet, age 39, was convicted by a jury for the crime of aggravated rape, a violation of LSA-R.S. 14:42. He was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[1] On appeal, the defendant urges fifteen assignments of error.

*670 FACTS
The incident on which the conviction was based occurred between the defendant and a seven-year-old girl at his residence prior to July 23, 1983. Three other children, ranging in ages from approximately seven to nine years old, were also present.
The victim testified they were at defendant's home playing with his nephew and niece when the defendant promised the victim candy if she would lower her pants and underwear. After doing as he requested, she stated that the defendant placed her on the bed, removed his clothes and attempted to have sexual intercourse with her.
The victim testified that she was aware of what the defendant was doing, that it hurt, that he had penetrated her slightly, that she called for help and she cried. The victim's brother witnessed the incident and his testimony corroborated the girl's statements. He also testified that she called to him to help her. The defendant's niece also witnessed the incident described, but claimed that the victim told her there was no penetration and that the victim threatened to accuse the defendant of rape if he didn't engage in a sexual act with her.
The victim and her brother testified they refrained from telling the victim's mother for one to two weeks because they were afraid. Her brother said the defendant told them not to tell. Upon the mother learning of the incident, she notified the Houma police and took her daughter to a physician for an examination.
In response to the complaint, the police questioned the defendant at his sister's home on the night of July 23, 1983. After being given his Miranda warnings, the defendant denied raping the victim. Defendant voluntarily went to the police station with Sergeant Freddie Williams of the Houma Police Department. Since he insisted that his niece and nephew could settle the matter, the police took him back to his sister's residence where Sgt. Williams questioned the children in the defendant's presence. Following the questioning, the defendant was formally arrested and again advised of his Miranda rights.
While being booked into jail, the defendant told Sgt. Williams that he had had sex with the victim. Two days later, John Keith Chapman, a detective with the Houma Police Department, obtained a signed written confession from the defendant, after he had advised the defendant of his constitutional rights and the defendant had signed an advice of rights form. In the written confession, the defendant admitted to attempting sexual intercourse with the victim.
Dr. Dennis Kenyon, the emergency room physician who examined the victim on July 23, 1983, testified that he found no contusions, abrasions or lacerations on any part of the victim's body, either internally or externally. Her hymen appeared intact and normal. He cultured a vaginal discharge for gonorrhea, the results of which were positive. While the doctor generally found no evidence of penetration, he testified that although the hymen was intact there still could have been penetration past the labia or outer edge of the vagina.
Dr. Ray Cinnater, the physician in charge of examining prisoners, testified that there were no records in his files indicating whether or not the defendant had ever had gonorrhea. He also testified that it was possible for a male to have sexual relations with a female who has gonorrhea and not contract the disease.
Defendant testified in his own defense that the victim threatened him in front of the other children. She told him that if he did not have sex with her, she would tell her mother he had raped her. He admitted he "obliged" her, claiming he had "pretended" to have sex with her by rubbing his penis on her vagina, but he denied that he had penetrated her.

ASSIGNMENT OF ERROR NUMBER 1
Defendant asserts that the trial court erred in denying defendant's motions requesting that he be provided grand jury *671 testimony of certain trial witnesses for impeachment purposes.
The record reflects that the motion was made and denied twice: the first time at the beginning of trial prior to jury selection and then again prior to the testimony of defendant's niece. After the state's direct examination of the victim's brother, defense counsel moved that the trial court examine in camera the grand jury testimony of that witness for exculpatory and inconsistent statements. The trial court granted the motion in regard to exculpatory statements only. Upon examination of the pertinent grand jury testimony, the trial court failed to find any exculpatory statements therein. Similarly, following the state's direct examination of the victim, the defense made identical motions to those made in regard to her brother, on which the trial court ruled as it had previously.
In State v. Ates, 418 So.2d 1326 (La. 1982), the supreme court advised that, generally, the proceedings of the grand jury are to be kept secret, in accordance with La.C.Cr.P. art. 434(A). They explained that "the testimony of a witness before the grand jury may not be used in Louisiana for cross-examination, unless the testimony requested falls within one of two exceptions mentioned in Code of Criminal Procedure, Article 434." 418 So.2d at 1329. The exceptions are as follows:
However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings ... and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. La.C.Cr.P. art. 434(A)
In Ates, the justices stated that "a trial judge is not required to grant an in camera inspection in response to a defendant's general request for grand jury testimony." 418 So.2d at 1329. In that case, the defendant sought to determine whether any inconsistent statements existed. The court ruled this was not a sufficient showing by the defendant to impinge upon the grand jury's secrecy. 418 So.2d at 1330.
In the instant case, there was no showing that the requested testimony fell within either of the exceptions in La.C.Cr.P. art. 434 that would permit disclosure. The trial court did not err in refusing to make the requested grand jury testimony available to defendant or in refusing an in camera examination of the testimony.

ASSIGNMENT OF ERROR NUMBER 2
Defendant contends that the trial court erred in denying his motion that all witnesses be removed from the courtroom throughout the duration of the trial, except when testifying. Thus, he sought the sequestration to be continued even after a witness had finished testifying and had been released as a witness. Defendant states his motion was requested to prevent the "coaching" of several young witnesses who testified on behalf of the state. He alleges that the victim was coached by her aunt and asserts that had the motion been granted the "coaching" would not have been accomplished.
We note that the victim's aunt was not listed as a witness and was never placed under the rule of sequestration. She testified only when called as a defense witness in order to support defendant's motion for a mistrial. Therefore, the denial of the sequestration motion for the entire trial had no effect upon the presence of the victim's aunt in the courtroom.

ASSIGNMENT OF ERROR NUMBER 3
Defendant alleges that the trial court erred in denying his challenges for cause of two prospective jurors, Mrs. Reana Sterkins and Mr. Harvey Harris.
During voir dire, defense counsel asked prospective jurors if any of them felt defendant had to prove his innocence. Both Mr. Harris and Mrs. Sterkins initially indicated that they felt that a defendant is guilty until proven innocent.
The trial court explained in detail that the entire burden of proof is on the state to *672 prove guilt and that the defendant is not required to prove anything. The court then asked both Mr. Harris and Mrs. Sterkins, individually, if they could require that the state prove its case. Both responded affirmatively.
Subsequently, defense counsel challenged both Mr. Harris and Mrs. Sterkins for cause. The trial court denied both challenges, based upon its re-interrogation, and stated that it was satisfied that both understood their obligations as jurors and that they were required to follow the law as given to them by the court.
The applicable codal article, La.C.Cr.P. art. 797(2) provides:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
We believe that the initial responses of the prospective jurors to defense counsel's inquiry were brought about more from a misunderstanding of the law than bias. We are convinced that after further questioning by the trial court, they were adequately rehabilitated. We, therefore, find no abuse of discretion in the trial court's refusal to dismiss them for cause. See State v. Glaze, 439 So.2d 605 (La.App. 1st Cir.1983).

ASSIGNMENT OF ERROR NUMBER 4
Defendant contends that the trial court erred in denying his motion for a mistrial based upon an improper statement made by the state which referred to the fact that defendant was presently incarcerated. He argues that, just as it is prejudicial to make a person stand trial in his prison clothes, it is also prejudicial to refer to the fact that a person is presently imprisoned. He further argues that such a reference unfairly discriminates against persons who cannot afford to post bond.[2]
The pertinent reference to defendant's incarceration occurred during the testimony of a state witness, defendant's niece, when the prosecutor asked her if she knew where her uncle lived. She responded, "In jail right now." The state then asked her if she knew where he lived before that, and she gave his address.
Defense counsel immediately requested a mistrial. In denying defendant's motion for mistrial, the court observed that the jury was already fully aware before the niece's testimony that defendant had been incarcerated, since defense counsel himself had indicated to prospective jurors during voir dire that his client was in jail and had asked them not to hold that fact against defendant.
Defendant's relief in this regard is pursuant to La.C.Cr.P. art. 771[3] since the statement was made by a witness and not a court official. Mistrial under this article is at the discretion of the trial court and should be granted only where the prejudicial *673 remarks of the witness make it impossible for defendant to obtain a fair trial. State v. Smith, 418 So.2d 515 (La.1982). Moreover, mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. 418 So.2d at 522.
Herein, the record shows that the trial court correctly observed that defense counsel initially raised the defendant's incarceration. Additionally, while the prosecutor might have more precisely formulated his question which provoked the witness's response, we do not believe that the remark was deliberately obtained by the prosecutor to prejudice the rights of defendant. See State v. Lewis, 353 So.2d 703 (La.1977). Under these circumstances, the trial court's denial of the motion for mistrial was not an abuse of discretion.

ASSIGNMENT OF ERROR NUMBER 5
Defendant asserts that the trial court erred in denying defendant's motions to quash the indictment.
Defense counsel initially made the motion immediately following the testimony of defendant's niece. He argued that the indictment was defective since it stated that the incident occurred between June 15 and July 23, 1983, and the witness's testimony indicated it happened prior to those dates.[4] The trial court denied the motion. The same motion was again made and denied following the testimony of the victim's brother.
The pertinent codal article, La.C.Cr.P. art. 468, provides:
The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.
If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.
The date is not essential to the crime of aggravated rape; thus it need not be alleged in the indictment, and the indictment shall not be held insufficient if it does not state a proper date. State v. Glover, 304 So.2d 348 (La.1974).
Herein, even assuming that the dates of the instant offense were incorrectly set forth in the indictment, the indictment was not for that reason insufficient or defective. The trial court, therefore, properly denied defendant's motions.

ASSIGNMENTS OF ERROR NUMBERS 6 AND 7
Defendant alleges that the trial court erred in sustaining the state's objections to questions propounded by defense counsel to the victim concerning "Bill" and in failing to stay further trial proceedings pending an application for writs to this court and/or the supreme court as to that ruling.
During cross-examination, the victim stated: "You see this happened to me twice. One[sic] by a man named Bill and then by him." Defense counsel then asked, "Who was Bill?" The prosecutor objected in regard to the victim's reputation for chastity. The trial court, referring to the rape shield law, LSA-R.S. 15:498[5], stated that the chastity of the victim cannot be at issue in a rape case. The court did agree to permit defense counsel to pursue his question, but strictly limited the inquiry to identifying "Bill". Defense counsel then ascertained that "Bill" was a friend of the *674 victim's father. When the defense tried to question about the prior incident, the court sustained the prosecutor's renewed objections.
The defendant asked the trial court to stay proceedings pending an application for writs to the higher courts. The request was denied. Defendant argues that the questioning was necessary to show that the victim had confused the defendant with "Bill".
Use of the rape shield must be balanced against the right to confrontation in each particular case. "[T]he extent to which the rape shield would exclude evidence which is genuinely relevant, highly probative, and critical to the accused's defense" must be weighed. State v. Vaughn, 448 So.2d 1260, 1262 (La.1983). We find that the testimony that defense counsel sought to elicit through his disallowed questions was essentially irrelevant. Any prior sexual activity between the victim and "Bill" had no bearing on the instant offense.
Having found no error in the trial court's ruling in this matter, the court's alleged improper denial of the stay order pending application for writs is moot.

ASSIGNMENTS OF ERROR NUMBERS 8 AND 11
Defendant claims that the court erred in denying his motions for mistrial based on grounds (1) that the testimony of the victim was "coached" by her aunt at trial and (2) that the victim disregarded the court's order and openly played in the presence of the jurors during a lunch recess.
During cross-examination of the victim, defense counsel inquired into "coaching" by asking the child if her aunt was making signals to her while she was on the witness stand. After the victim answered affirmatively, defense counsel asked the following questions:
Did she tell you why she was nodding her head and making motions?
* * * * * *
... You wait for her to nod before you answer the questions?
* * * * * *
Did she help you answer almost all the questions? Did she make a signal on almost every question?
* * * * * *
Before you answer any questions she was nodding her head either yes or no, wasn't she?
After each of the above questions was asked, the victim answered, "No, sir."
After obtaining the court's permission, defense counsel called the victim's aunt and Patricia Chauvin, the trial minute clerk, to the stand. The victim's aunt admitted that she nodded her head when questions were asked "but not to her ... not to tell her how to answer." The aunt also denied making any motions whatsoever to make sure that she maintained eye contact with the victim, while the victim was on the stand.
Ms. Chauvin testified that whenever she would look up, the victim's aunt was making "head motions" and that she saw the aunt lean to one side "like she was going around somebody." Ms. Chauvin indicated the nodding was done after a question was asked and before it was answered, but she stated she did not know whether or not the aunt's nodding was meant to be a signal to the victim.
Defense counsel moved for mistrial because of the alleged "coaching". The court denied the motion, stating that there had been no showing that any movements by the aunt did in fact influence the victim, and that coaching of the victim during her testimony had not been proven.
The incident involving the child playing in the presence of the jurors occurred during a lunch recess taken toward the latter part of the trial. The state had completed its case-in-chief, including the testimony of the victim. The jurors had not yet been formally sequestered pursuant to La.C. Cr.P. art. 791; however, they had been instructed not to discuss the case with anyone. The defendant does not allege any *675 type of improper communication with the jury. He argues that the purpose of juror sequestration is to insulate them from outside influences. He contends the victim should not have been in the presence of the jurors and that it would be only natural for them to feel sympathy for her.
In denying defendant's motion for mistrial, the court compared the incident to the situation in which the victim is allowed to remain in the courtroom after completion of her testimony. The court stated it found no prejudice based upon the unsupported information offered by defense counsel.
A mistrial shall be ordered when prejudicial conduct inside or outside the courtroom makes it impossible to obtain a fair trial. La.C.Cr.P. art. 775. Mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. The determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. Smith, 430 So.2d 31 (La.1983). In the instant case, we find that the trial court did not abuse its discretion in denying defendant's motion for mistrial. No showing was made that the defendant suffered any prejudice.

ASSIGNMENT OF ERROR NUMBERS 9 AND 10
Defendant alleges the court erred in overruling his objections to the admissibility of his out of court statements, both oral and written. He argues that his written confession was not freely and voluntarily made because it was induced by police threats. Moreover, he contends that during discovery, the state disclaimed possession of any documents which it intended to use at trial. Defendant categorizes his confession as a document.
Since the argument as briefed pertains only to his written confession, any issue regarding the oral statement is deemed abandoned. See Uniform RulesCourts of Appeal, Rule 2-12.4.
Outside of the presence of the jury, the state presented the testimony of John Keith Chapman, the officer who obtained the confession, in order to establish the necessary predicate for admitting the confession into evidence. After Chapman testified, the defendant requested and received permission to offer rebuttal testimony, over the state's objection that defendant had not filed a motion to suppress. See La.C.Cr.P. art. 703.[6] Following the rebuttal testimony, the trial court ruled the confession admissible.
Chapman testified that before the interview the defendant acted friendly and was smiling and that there was no hostility between them. Chapman gave defendant his Miranda warnings, which defendant appeared to understand. The defendant signed an advice of rights form and consented to give a statement. Although the statement was given to Chapman, he testified that two other officers, Lt. William Null and Detective Ben Lodell, were "in and out" while the statement was taken. Chapman testified that neither he nor anyone else in his presence threatened the defendant, hit or struck him, promised him leniency or in any way coerced the defendant's statement. He stated that the defendant did not complain to him about being threatened.
*676 The defendant testified that after he was alone with Chapman for about two minutes, another detective, whose name he did not know, approached him with a pistol in his hand, made accusations and told him that unless he gave his confession "the only way you'll see freedom will be in a box." The defendant stated that he was promised medical help if he confessed. He testified that he was terrified and he signed the statement. He indicated that he had not told Chapman about the threat because Chapman was in the room when the threat was made. The defendant, who stated that he quit school at age 15, at a fifth grade level, denied having read his signed statement but admitted that he could read and write. He demonstrated his ability to read by reading aloud in court a portion of the advice of rights form.
Cynthia Wadsworth, defendant's half-sister, testified that the defendant told her he had been forced to make a statement and that a policeman had threatened to beat him if he did not confess. Also introduced into evidence was a letter written by Dr. K. Thomas Haydel, dated April 23, 1984, in which the doctor states that the defendant told him he was forced to sign his confession because of stress exerted by a policeman.
In order for a confession to be admitted into evidence, it must be affirmatively shown that the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451. Confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, are involuntary and inadmissible as a matter of constitutional law. The state has the burden of affirmatively proving the confession was free and voluntary, therefore, if the defendant alleges police misconduct in obtaining a confession, it is incumbent upon the state to rebut these allegations specifically. State v. Welch, 448 So.2d 705 (La.App. 1st Cir.1984), writ denied, 450 So.2d 952 (La.1984). The state has the burden of proving beyond a reasonable doubt the voluntariness of a confession which the defendant has moved to suppress. State v. Rodrigue, 409 So.2d 556 (La.1982).
The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980). In reviewing the trial judge's ruling as to the admissibility of a confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. Rodrigue, 409 So.2d at 561.
Upon our careful review of the evidence presented, including defendant's rebuttal evidence, we find that the court's ruling that defendant's confession was freely and voluntarily given is supported by the evidence.
The defendant also contends that the confession is inadmissible because of a defect in the discovery process. When answering one item on the defendant's motion for discovery, the state responded that it did not have any documents in its possession which it intended to use as evidence. However, in its answer to another item, the state expressly informed defense counsel that a written confession had been made by the defendant, and a copy of that confession was attached and made a part of the state's answer. At trial, defense counsel acknowledged that the confession was attached to the state's answer to the discovery motion.
Defendant does not claim surprise by the introduction into evidence of his written confession. He merely asserts that the state's negative response to one of the discovery items precludes introduction of the written confession.
The state not only apprised defendant of the existence of the confession, it provided defendant with a copy during discovery. A reasonable conclusion would have been to *677 assume that the state intended to use the confession at trial. Additionally, the state filed a notice of intended use in the record in accordance with La.C.Cr.P. art. 768. Therefore, the court did not err in allowing the confession to be introduced into evidence.

ASSIGNMENT OF ERROR NUMBER 12
Defendant claims that the court erred in denying his motion for mistrial based on grounds that the court commented on the evidence and castigated defense counsel in front of the jury. He further argues that the comments were prejudicial and damaging to his case.
In State v. Johnson, 438 So.2d 1091, 1102 (La.1983), the supreme court emphasized that the trial judge must be completely neutral and stated:
A trial judge's disparaging remarks or intemperate criticism of defense counsel may constitute reversible error when such remarks adversely influence and prejudice the jury against the defendant. In order to constitute reversible error, however, the effect of the improper comments must be such as to have influenced the jury and contributed to the verdict. [Citations omitted]
In the instant case, the comments occurred during the testimony of Dr. Ray Cinnater when the defense counsel requested an instanter subpoena for another witness. In granting the request, the court stated: "That's the last one Mr. Blaize. We're not going to instanter subpoena for the rest of the year. If you can't get your case prepared to come to court, we're going without it." We note that during the testimony of a previous witness, defense counsel had requested and been granted an instanter subpoena for Dr. Cinnater.
Defense counsel moved for and was denied a mistrial. While we do not condone the judge's comments, we find that they do not constitute comments on the evidence intended to impress the jurors with the trial court's opinion as to the defendant's guilt or innocence. See La.C.Cr.P. art. 772. We further find that the comments of the court did not rise to so substantial a level as to adversely affect the availability of a fair and impartial trial. See Johnson, 438 So.2d at 1102. For the foregoing reasons, a mistrial was not warranted.

ASSIGNMENT OF ERROR NUMBER 13
Defendant contends that the court erred in denying his motion for mistrial based on improper prejudicial remarks made by the state during closing arguments. He argues that the prosecutor's remarks amounted to a prohibited expression of personal opinion as to the guilt or innocence of the defendant. See La.C.Cr.P. art. 774.
The alleged improper comments of the assistant district attorney occurred during his concluding remarks on closing argument. After he stated that the three prerequisites for aggravated rape had been shown, he asked the jury to find the defendant guilty as charged and added, "That defendant right there is guilty and I'm going to tell you I've proved he was guilty."
Defense counsel did not object to the state's comment and did not request an admonishment to the jury to disregard the statement. Instead, he moved for a mistrial. In denying the defendant's motion for mistrial, the judge stated that when charging the jury, he would instruct them to disregard the arguments of both counsel.
In State v. Montgomery, 432 So.2d 340, 344 (La.App. 1st Cir.1983), the court explained that personal remarks are prohibited to prevent the jury from giving greater weight to them than to evidence, adding:
Nevertheless, the expression of such an opinion by the prosecutor is often held to be non-reversible error, if it is apparent to the jury that it is expressly or impliedly based only on the evidence presented to the jury rather than on personal knowledge of facts outside the record. Indeed, before a verdict will be overturned on the basis of improper argument, the court must be thoroughly convinced *678 the comment influenced the jury and contributed to the verdict. [Citations omitted]
In the instant case, we find that, taken in context, the alleged improper comments were based on the evidence presented rather than on personal knowledge of facts outside the record. Moreover, we are thoroughly convinced that the comments did not contribute to the verdict. Therefore, a mistrial was not warranted.

ASSIGNMENTS OF ERROR NUMBERS 14 AND 15
Defendant asserts that the court erred in denying his motion for a new trial based on the grounds that the verdict was contrary to the law and the evidence. He alleges that the state's evidence was insufficient to prove one of the essential elements of aggravated rape, i.e., that sexual penetration occurred. According to LSA-R.S. 14:41 "any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime." (Emphasis ours).
The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal under La.C.Cr.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Although the record does not indicate the defendant in the instant case made such a motion, a reviewing court, in spite of defendant's failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in La.C.Cr.P. art. 821. State v. Washington, 421 So.2d 887 (La.1982).
The standard established by La.C.Cr.P. art. 821(B) is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Walker, 447 So.2d 54 (La.App. 1st Cir. 1984).
Initially, we note that in defendant's written confession he admitted "I tried to put my penis inside her [the victim's] vagina but it wouldn't fit ..." Such an admission constitutes sufficient evidence to establish penetration, however slight.
Even assuming arguendo that defendant had not made the foregoing admission, the testimony of a victim of rape is sufficient to establish sexual penetration. See State v. Rives, 407 So.2d 1195 (La. 1981). In the instant case, the victim's testimony sufficiently establishes that defendant sexually penetrated her. She testified that the defendant "tried to put his thing in mine." Her testimony also indicates that she felt it, it hurt, and he had done it a "little bit." See State v. Prestridge, 399 So.2d 564 (La.1981).
Additionally, the jury's verdict indicates that they accepted the victim's testimony regarding penetration as more credible than that of the defendant, who, while contending that he had been forced to give his written confession, admitted he had "obliged" the victim and claimed he "pretended" to have sex with her, but did not penetrate her. In State v. Mullins, 464 So.2d 459, 463 (La.App. 1st Cir.1985), this court stated the following:
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. A determination of the weight of the evidence is a question of fact. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as "thirteenth juror" in assessing what weight to give evidence in criminal casesthat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. [Citations omitted]
Thus, the evidence in the record is clearly sufficient to meet the requirements of La. C.Cr.P. art. 821.
*679 Accordingly, we find that all fifteen assignments of error are without merit. For the above and foregoing reasons, we affirm the verdict and the sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] LSA-R.S. 14:42 provides that aggravated rape occurs when there is anal or vaginal intercourse with a victim under the age of twelve years. The mandatory sentence is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[2] Defendant's argument that the alleged improper reference constitutes an unfair discrimination against persons who cannot afford bond is a ground for objection not articulated at trial. Such a new ground cannot be raised for the first time on appeal; therefore, we did not consider it in our review. See State v. Clayton, 427 So.2d 827 (La.1982).
[3] La.C.Cr.P. art. 771 provides in pertinent part:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial ... when the remark is ... of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
[4] Defendant argues for the first time on appeal that the vagueness regarding the date of the offense prejudiced his right to establish an alibi defense. Since that ground for objection was not articulated at trial, it cannot be raised for the first time on appeal. See Clayton, 427 So.2d at 834. Moreover, defendant merely asserts that he might have been able to establish an alibi. He has shown no prejudice.
[5] LSA-R.S. 15:498 provides as follows:

Evidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused.
[6] Although defendant did not specifically request permission to file a motion to suppress, allowing the rebuttal testimony in effect granted such a motion. The trial court offered specific reasons for allowing this procedure. It noted some confusion as to whether the confession would be introduced into evidence, recognizing that defense counsel disclaimed receipt of the notice filed in accordance with La.C.Cr.P. art. 768, even though the record showed this notice contained a certificate of service. The court also commented on the misleading nature of the state's answer to discovery as to its possession of documents intended for use at trial.

We specifically note this court is not faced with the issue of whether defendant waived his right to contest the admissibility of the confession by failing to file a motion to suppress. The trial court did, in effect, allow such a motion by its action. We further recognize that the propriety of that decision by the trial court is not an issue presently before this court.