604 So.2d 685 (1992)
STATE of Louisiana
v.
Baron M. JOHNSON.
No. 91 KA 0934.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*688 Camille A. Morvant, II, Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State of La.
Anthony P. Lewis, Thibodaux, for defendant-appellant Baron Johnson.
Before COVINGTON, C.J., and WATKINS and LeBLANC, JJ.
WATKINS, Judge.
The defendant, Baron M. Johnson, was charged by bill of information with forcible rape, in violation of LSA-R.S. 14:42.1. He pled not guilty and, after trial by jury, was found guilty as charged. Thereafter, the State filed an habitual offender bill of information. After a hearing, the trial court adjudicated the defendant to be a third felony habitual offender and imposed a sentence of seventy years at hard labor, including four years without benefit of parole, probation, or suspension of sentence, with credit for time served. The defendant has appealed, alleging seventeen assignments of error, as follows:
1. The trial court erred in permitting Thibodaux Police Lieutenant Eric Fast to be exempted from sequestration as the State's representative.
2. The trial court erred in admitting Lt. Fast's testimony into evidence over the defendant's objection.
3. The trial court erred in allowing exhibits to be introduced into evidence through the testimony of Lt. Eric Fast.
4. The trial court erred in allowing Thibodaux Police Sergeant Ronald Babin to testify about an inculpatory statement made by the defendant despite the absence of the required pretrial notice.
5. The trial court erred in allowing hearsay testimony to be admitted during the preliminary examination.
6. The trial court erred in finding probable cause as a result of the preliminary hearing.
7. The trial court erred in ordering defense counsel to drive to the State Police Crime Lab in Baton Rouge to obtain a copy of the Coroner's Report which was never forwarded by the prosecutor to the Crime Lab.
8. The trial court erred in adjudicating the defendant to be a third felony habitual offender.
9. The trial court erred in considering the initial investigation report at the sentencing hearing.
10. The trial court erred in expanding the scope of the sentencing hearing to include testimony by Lt. Fast about a direct threat allegedly made by the defendant.
11. The trial court erred in denying all the defendant's motions for a recess during the presentation of his case while granting all of the State's motions for a recess during a presentation of its case.
12. The trial court erred on several occasions by charging defense counsel, in the presence of the jury, with causing delays in the proceedings thereby causing prejudice towards defendant and defendant's counsel.
13. The prosecutor erred during its closing argument by deliberately making a remark designed to inflame the jury during their deliberation.
14. The trial court erred by exhibiting a broad smile to the jury during the entire portion of defendant's testimony where defendant began crying.
15. The trial court erred in failing to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1 and in imposing *689 an excessive and indefinite sentence.
16. The trial court erred in imposing an illegal sentence.
17. The trial court erred in failing to order a presentence investigation report because the postsentence investigation report was not prepared within sixty days of sentencing as required by LSA-C.Cr.P. art. 876.

FACTS
During the early morning hours of September 9, 1990, the defendant entered the victim's apartment in an unknown manner and went upstairs to her bedroom. The victim was in bed, and the lights were turned off when the attack began. The defendant placed his hand over the victim's mouth and threatened to harm her if she screamed or otherwise resisted. The defendant also blindfolded the victim, although this blindfold later fell off. During an ordeal which lasted approximately three hours, the defendant forced the victim to engage in sexual intercourse with him three times and perform fellatio on him one time. At some point, however, the defendant began crying and talking to the victim. The defendant apologized to the victim and began questioning her about her personal life. The defendant also related personal information about himself, including his first name, Baron. Before the defendant left the victim's apartment, he forced her to accompany him downstairs and give him a drink of water. After wiping the glass, the defendant left, taking two pairs of the victim's panties and two of her gold chains. When the defendant left, the victim telephoned her best friend and her mother. Eventually, the police were called.
The defendant was arrested a short time later, based on the description given by the victim and the fact that she knew his first name was Baron. Thibodaux Police officers secured a search warrant for the defendant's residence. During the search, the officers recovered the two gold chains and the victim's panties. The defendant also made several inculpatory statements during the search and later at the police station.
At the trial, the victim related the details of the incident and specifically stated that she did not consent to sexual intercourse with the defendant. Several Thibodaux police officers testified as to the inculpatory statements made by the defendant and the evidence recovered during the search of his residence.
The defendant took the stand and admitted that he had engaged in sexual intercourse with the victim on September 9, 1990. However, according to the defendant, the victim had consented. The defendant explained that he and the victim had engaged in sexual relations several times during the summer of 1990, but their relationship was kept secret because he was black and the victim was white. The defendant supplied innocent explanations for the evidence recovered from his residence and denied making any inculpatory statements.

ASSIGNMENTS OF ERROR NOS. ONE, TWO, AND THREE:
In these assignments of error, the defendant contends that the trial court erred in permitting Thibodaux Police Lieutenant Eric Fast to be exempted from sequestration as the State's representative. Specifically, the defendant contends that error occurred when Lt. Fast was allowed to testify after listening to the previous testimony of the other State witnesses.
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one witness from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Revere, 572 So.2d 117, 125 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). The resolution of sequestration problems is within the sound discretion of the trial court. State v. Ondek, 584 So.2d 282, 298 (La. App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991). On appeal, the reviewing court will look at the facts of each case to determine whether or not a sequestration violation *690 resulted in prejudice to the accused. State v. Lopez, 562 So.2d 1064, 1066 (La. App. 1st Cir.1990).
LSA-C.E. art. 615 provides, in pertinent part:
A. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
* * * * * *
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney; ...
Initially, when the prosecutor announced his intention to designate Lt. Fast as the State's representative or case agent pursuant to LSA-C.E. art. 615, defense counsel objected, citing Article 615A(4). When the prosecutor noted that this particular provision was inapplicable, defense counsel withdrew his objection. Thereafter, when the prosecutor called Lt. Fast to the stand, defense counsel again objected, arguing that he should not be allowed to testify because he had remained in the courtroom during the testimony of the other State witnesses. For the first time, defense counsel cited Comment (d) to LSA-C.E. art. 615.[1] After reviewing Comment (d) and entertaining argument, the trial court ruled that Lt. Fast could testify. This ruling was based on two grounds. First, the trial court indicated that defense counsel's objection was untimely. Second, the trial court stated that Lt. Fast was "a man who is witness to something which is essentially a confession as a result of a search warrant and he is not a witness to the actual fact of the crime and I think the distinction has to be made there."
In Lopez, this Court considered a similar situation when the defendant objected to the presence during the trial of a law enforcement officer who had been designated as the State's case agent under Article 615. Therein, we noted that Comment (d) reflected a clear intention that fact witnesses designated as the case agent should testify before the other witnesses; in that case, the order of trial was especially critical because the State's case depended almost completely on the credibility of law enforcement officers. Because the trial court permitted the case agent (who was the principal witness against the defendant) to testify after listening to the testimony of some of the other State witnesses, we reversed the conviction and sentence and remanded the case to the district court for further proceedings.
In his brief to this Court, the defendant relies heavily on Lopez and concludes that Lt. Fast should have testified first because the State's case "depended almost completely on the credibility of law enforcement witnesses." We disagree with this assertion and find the instant case to be distinguishable from the situation presented in Lopez. Although Lt. Fast was the detective in charge of this investigation, there is no doubt that the victim, who testified first, was the principal State witness in this case. Nevertheless, as Comment (d) indicates, Lt. Fast should have testified first. Because the defendant objected immediately before Lt. Fast testified, his objection was timely, and this portion of the trial court's ruling was incorrect.
*691 Additionally, the second component of the trial court's ruling, i.e., that Lt. Fast was not a fact witness, also was partially erroneous. At the trial, Lt. Fast gave testimony in three key areas: (1) statements made to him by the victim concerning the offense; (2) statements made to him by the victim concerning her identifications of the defendant; and (3) inculpatory statements by the defendant and incriminating evidence recovered during the search of the defendant's residence. At the preliminary examination, however, Lt. Fast had given substantially similar testimony about statements made to him by the victim concerning the offense and concerning her identification of the defendant. Although Lt. Fast's trial testimony about these matters was more detailed, the fact that his trial testimony was substantially similar to his preliminary examination testimony practically negates any possibility that his trial testimony on these particular matters could have been influenced by the testimony of the other State witnesses. Furthermore, Lt. Fast's trial testimony about the victim's identifications of the defendant was not crucial. The defendant admitted to sexual intercourse with the victim and asserted a defense of consent, and therefore identity was not an issue.
The only key area about which Lt. Fast had not previously testified was the search of the defendant's residence. Because all of the other officers present at the search of the defendant's residence testified before Lt. Fast, there was a possibility that his testimony was influenced by their testimony. Nevertheless, for the reasons which follow, we find the defendant was not prejudiced by the possibility that this limited area of Lt. Fast's trial testimony could have been influenced by the testimony of previous witnesses.
First, as noted above, the victim was the principal witness in this case, and she testified that she did not consent to sexual intercourse with the defendant. Second, even if Lt. Fast's testimony about the search of the defendant's residence might have been influenced by previous testimony, this possibility does not alter the relevant, properly admitted testimony by the other officers as to the incriminating evidence resulting from the search and inculpatory statements by the defendant. Finally, while Lt. Fast was a fact witness to some extent, he was subjected to lengthy cross-examination during which defense counsel fully explored the possibility that his testimony on direct examination might have been influenced by previous witnesses. Considering the above, and recognizing the overwhelming evidence presented in this case, we find that any error in allowing Lt. Fast's testimony under these circumstances was harmless beyond a reasonable doubt. See LSA-C.Cr.P. art. 921.
For the above reasons, these assignments of error are meritless.

ASSIGNMENTS OF ERROR NOS. FOUR AND SEVEN:
These assignments of error pertain to alleged discovery violations by the State. In assignment of error number four, the defendant contends that the trial court erred in allowing Sgt. Ronald Babin of the Thibodaux Police Department to testify about inculpatory statements made by the defendant during the execution of the search warrant at the defendant's residence when the existence of these statements had not been revealed in the State's answer to the defendant's motion for discovery. In assignment of error number seven, the defendant contends that the trial court erred in ordering defense counsel to drive to the State Police Crime Lab in Baton Rouge to secure a copy of the Coroner's Report when this report was not forwarded by the State to the Crime Lab.
The discovery rules in the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. Discovery procedures enable the defendant to properly assess the strength of the State's case against him in order to prepare his defense. If a defendant is lulled into a misapprehension of the strength of the State's case by the failure to fully disclose, such prejudice may constitute reversible error. State v. Roy, 496 So.2d 583, 590 *692 (La.App. 1st Cir.1986), writ denied, 501 So.2d 228 (La.1987). However, the State's failure to comply with discovery procedures will not automatically demand a reversal. State v. Burge, 486 So.2d 855, 866 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986).
On the morning of the second day of trial (December 19, 1990), out of the jury's presence, the prosecutor announced that he recently had received information of inculpatory statements made by the defendant to Sgt. Babin during the search of the defendant's residence. The prosecutor explained that he did not previously talk to Sgt. Babin about the search because Sgt. Babin's only duty was to provide security while the other officers conducted the search. In fact, Sgt. Babin was placed in charge of the defendant and remained in close proximity to the defendant during the search, during which the defendant apparently made several inculpatory statements to Sgt. Babin that were not heard by the other officers. The trial court accepted the prosecutor's explanation that this information had been inadvertently omitted during discovery and reviewed its options for sanctions under LSA-C.Cr.P. art. 729.5. Defense counsel requested a mistrial. The trial court asked how the defendant would be prejudiced by the introduction of Sgt. Babin's testimony, and defense counsel stated that he would be unable to effectively cross-examine Sgt. Babin because of surprise and a lack of preparation. However, when the trial court asked what defense counsel might have done to prepare for such testimony, defense counsel was unable to give a reason deemed acceptable by the trial court. The trial court offered to recess the trial for one day in order to allow defense counsel to prepare for Sgt. Babin's testimony, but defense counsel declined this offer. Thereafter, the trial court denied the motion for a mistrial and allowed Sgt. Babin to testify about inculpatory statements made to him by the defendant during the search.
We find no error in the trial court's rulings. While this information should have been provided to the defense during discovery, it is obvious that the prosecutor was not guilty of any deliberate misconduct. In light of defense counsel's refusal of the trial court's offer of a one day recess to prepare to meet Sgt. Babin's testimony, we find no abuse of discretion in the trial court's denial of the defendant's motion for a mistrial. Moreover, there is simply no showing of prejudice by the defendant. Defense counsel gave no indication of how he might or could have altered his defense strategy had the State properly complied with discovery by giving notice of the inculpatory statements made to Sgt. Babin. Other than thoroughly cross-examining Sgt. Babin as to the voluntariness and contents of the defendant's inculpatory statements and exploring Sgt. Babin's delay in reporting these statements to his superiors, which defense counsel did, he does not allege that there was any evidence or testimony he might have introduced to undermine the effect of Babin's testimony. See State v. Whitaker, 489 So.2d 998, 1003 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). Furthermore, defendant took the stand and denied making any inculpatory statements to Sgt. Babin or any of the other officers. Considering all of the above, we find this assignment of error to be meritless.
The defendant also contends that the trial court erred in ordering him to drive to the State Crime Lab in Baton Rouge to secure a copy of the Coroner's Report which the State never forwarded to the Crime Lab. Defense counsel contends that the time spent driving to Baton Rouge and back could have been used for trial preparation. In his brief to this Court, the defendant contends that "because the coroner's report was devoid of any objective evidence of force and/or rape and because the crime lab report was inconclusive, the State purposely attempted to avoid giving defendant copies of them until just before trial." Defendant contends that the Coroner's Report and the scientific test results constituted Brady material and, therefore, should have been provided to him at an earlier date.
*693 In order to constitute reversible error, the undisclosed exculpatory evidence would have to create a reasonable doubt that would not otherwise exist in the context of the whole record. State v. Hamilton, 470 So.2d 604, 607 (La.App. 1st Cir. 1985). Under the circumstances present herein, we find no reversible error.
At a pretrial hearing on December 10, 1990, defense counsel complained that he had not yet received the results of the scientific tests conducted on evidence sent to the State Police Crime Lab. The prosecutor stated that he had received information from personnel at the Crime Lab that their work was ninety-five percent complete. In order to complete discovery and avoid further delays in the trial date, the trial court ordered defense counsel to drive to the Crime Lab and review the evidence and test results. The defense received the results of the tests performed at the State Police Crime Lab and eventually received the Coroner's Report. This report contained information noted by the Coroner, Dr. Roy Dugas, resulting from his physical examination of the victim at Thibodaux General Hospital. Furthermore, the defendant questioned Dr. Dugas about his physical examination of the victim and about the information contained in the Coroner's Report. Contrary to the defendant's assertions, we find no deliberate attempt by the prosecution to withhold alleged Brady material until just before the trial. In any event, the defendant eventually received all of the information allegedly withheld during discovery and was able to incorporate it in his defense at trial. Accordingly, this assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. FIVE AND SIX:
In assignment of error number five, defendant contends that the trial court erred in allowing hearsay testimony to be admitted during the preliminary examination. In assignment of error number six, the defendant contends that, without this hearsay testimony, the State failed to establish probable cause at the preliminary examination.
At the preliminary examination, Lt. Fast related statements made to him by the victim during his investigation of the complaint and during the photographic lineup and the subsequent physical lineup identification procedures. Defendant objected on the basis that Lt. Fast's testimony was hearsay. The trial court overruled this objection and admitted this testimony into evidence. At the conclusion of the hearing, the trial court found probable cause.
Contrary to the defendant's argument, hearsay evidence is admissible at a preliminary examination hearing. LSA-C.E. art. 1101B(4); State v. Harris, 444 So.2d 257, 262 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1234 (La.1984). Considering the testimony adduced at the preliminary examination hearing, we conclude the trial court correctly found probable cause. Furthermore, the defendant subsequently was tried by a jury and convicted as charged. Therefore, the issue of probable cause at the preliminary examination is moot. State v. Lewis, 489 So.2d 1055, 1058 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
These assignments of error are meritless.

ASSIGNMENTS OF ERROR NOS. ELEVEN, TWELVE, AND FOURTEEN:
All of these assignments of error relate to alleged prejudicial conduct by the trial court. In assignment of error number eleven, the defendant contends that the trial court abused its discretion in granting all of the recesses requested by the State during trial but denying all recesses requested by the defense. In assignment of error number twelve, the defendant contends that the trial court consistently made prejudicial comments to defense counsel during the trial and in the jury's presence. In assignment of error number fourteen, the defendant contends that the trial court erred in smiling at the jury during that portion of the defendant's testimony when he began crying.
*694 A motion for a recess is evaluated by the same standards as a motion for a continuance. State v. Dufrene, 461 So.2d 1263, 1268 (La.App. 1st Cir.1984). The decision to grant a recess is within the sound discretion of the trial court and will not be reversed in the absence of a showing of abuse of that discretion. State v. Mack, 435 So.2d 557, 564 (La.App. 1st Cir.), writ denied, 440 So.2d 727 (La.1983).
Apart from his general assertion that all the State's requests for a recess were granted and all of the defense requests were denied, the defendant does not refer to any particular granting or denial of a recess during trial. Nevertheless, we have reviewed the entire trial transcript and have found no abuse of discretion by the trial court in the granting or denial of any particular recess. In fact, we note that the trial court granted a recess at the beginning of the third day of trial to await the arrival of Dr. Dugas after defense counsel stated that he wished to call Dr. Dugas as his first witness. Furthermore, as noted in the discussion of assignment of error number four, the trial court offered defense counsel a one day recess to prepare for Sgt. Babin's testimony, but defense counsel declined the offer. In light of the defendant's failure to show how he was prejudiced by the denial of any particular motion for a recess, we find no abuse of the trial court's discretion. See State v. Williams, 458 So.2d 1315, 1329 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985). This assignment of error is meritless.
Assignment of error number twelve refers to alleged prejudicial comments by the trial court. In his brief to this Court, the defendant states:
Throughout the trial of this matter and in the presence of the jury, the Court consistently made comments to defense counsel that suggested that defense counsel was the cause of any delays experienced during the trial. Given the short period of time allowed counsel to prepare for trial, the court's comments were unwarranted and were improper.
A trial judge's disparaging remarks or intemperate criticism of defense counsel may constitute reversible error when such remarks adversely influence and prejudice the jury against the defendant. However, in order to constitute reversible error, the effect of the improper comments must be such as to have influenced the jury and contributed to the verdict. See, State v. Feet, 481 So.2d 667, 677 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986). In briefing this assignment of error, the defendant has not referred to any particular comment or remark by the trial court. Nevertheless, we have reviewed the entire trial transcript in this matter and we find that, on some occasions, the trial court did reprimand and/or criticize defense counsel. However, most of these comments were made out of the jury's presence. Considering those comments by the trial court made in the jury's presence, we find absolutely no intent to impress the jurors with the trial court's opinion as to the defendant's guilt or innocence. See LSA-C.Cr.P. art. 772. In our view, even considering all of the comments as a whole, we find the trial court's comments did not rise to such a level as to endanger the defendant's right to a fair and impartial trial. See State v. Feet, 481 So.2d at 677. This assignment of error is meritless.
Finally, in assignment of error number fourteen, the defendant contends that the trial court erred by smiling at the jury during that portion of the defendant's testimony when he began crying. However, only that which is in the record may be reviewed. See LSA-C.Cr.P. art. 914.1; State v. Vampran, 491 So.2d 1356, 1364 (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La.1986). A review of the trial transcript gives no indication that the trial court smiled at the jury when the defendant began to cry, nor did the defendant properly preserve this alleged error by entering a contemporaneous objection. See LSA-C.Cr.P. art. 841. Accordingly, this alleged error is not properly reviewable on appeal and, therefore, this assignment of error is meritless.

*695 ASSIGNMENT OF ERROR NO. THIRTEEN:
In this assignment of error, the defendant contends that the prosecutor erred in his closing argument by deliberately inflaming the jury.
The defendant refers to the following remark made by the prosecutor during closing argument:
We all make mistakes, but there is a difference between a lie and a mistake. Baron Johnson is lying. Who has the most to either gain or lose out of this? Ask yourself that. Who has the most to gain or lose out of this? And then what you're going to have to ask yourself and what it's going to come down to is that either the Thibodaux Police Department is guilty or Baron Johnson is guilty. That's what it comes down to.
In his brief to this Court, the defendant contends that the above quoted remark by the prosecutor was a veiled reference to racial prejudice and, therefore, erroneous. The defendant states:
During his closing statement the District Attorney asked the jury to decide who had more to lose, thereby implying that the reputation of the defendant, a poor unemployed black man with prior criminal convictions and only two years of college would not be damaged as much by a conviction as would the victim, a young pretty white female who was college-educated, played organ for a near-by prominent Catholic church having a predominantly white congregation and who taught at a near-by (sic) predominantly white university, by an acquittal.
We disagree and find that this allegation is completely unsupported by the record. Contrary to the defendant's argument, this comment by the prosecutor did not contain any reference, direct or indirect, to racial prejudice. Instead, the prosecutor's remark related to the credibility of the victim and the defendant and, therefore, was properly within the scope of closing argument. See LSA-C.Cr.P. art. 774. Because the primary issue in the case amounted to a determination of the credibility of the victim and the defendant, the prosecutor was allowed to argue that, because of his interest in the outcome, the defendant was less worthy of belief than the victim. See State v. Jackson, 142 La. 636, 77 So. 484, 485 (La.1917). In any event, even if the prosecutor's remark was improper, the defendant waived any error by failing to object or request an admonition or mistrial during closing argument or immediately thereafter. LSA-C.Cr.P. art. 841; State v. Hookfin, 476 So.2d 481, 493 (La.App. 1st Cir. 1985).
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. EIGHT:
In this assignment of error, the defendant contends that the trial court erred in adjudicating him to be a third felony habitual offender because the State failed to introduce sufficient proof of the defendant's prior felony convictions. Defendant also contends that the predicate felony convictions, which were obtained by guilty pleas, could not be used for enhancement purposes because he had not been properly advised of his Boykin rights in connection with these two guilty pleas.
At the habitual offender hearing on February 4, 1991, the State introduced both documentary evidence and testimony to establish the defendant's status as a third felony habitual offender. State Exhibit 3 consisted of the May 6, 1981 transcript of the defendant's guilty plea to simple burglary and of the minute entry of the October 9, 1981 sentence for this conviction. During the May 6, 1981 guilty plea colloquy, the trial court adequately advised the defendant of his Boykin rights. The defendant admitted to committing a simple burglary on October 15, 1980. In connection with this guilty plea, on October 9, 1981, the defendant received a suspended sentence of six years at hard labor. He was placed on probation for five years. State Exhibit 2 contained a list of the conditions of probation for this simple burglary conviction. However, the defendant's probation was subsequently revoked after he committed a second simple burglary. State *696 Exhibit 1 contained a minute entry and the transcript of the December 27, 1984 guilty plea and sentencing proceedings for the second simple burglary. During these proceedings, the defendant admitted to committing a simple burglary on June 14, 1984, (while on probation for the first simple burglary conviction). After the trial court adequately advised the defendant of his Boykin rights, it accepted the defendant's guilty plea and imposed a consecutive sentence of two years at hard labor. State Exhibit 4 was a copy of the pleading setting the probation revocation hearing. State Exhibit 5 contained a minute entry of the probation revocation hearing on January 15, 1985. At the conclusion of this hearing, the trial court revoked the defendant's probation and reimposed the original sentence of six years at hard labor. State Exhibit 6 was an excerpt of the defendant's trial testimony, wherein he admitted the two prior simple burglary convictions and explained that the second simple burglary conviction resulted in the revocation of his probation for the first conviction. During this testimony, the defendant explained that he received sentences totalling eight years imprisonment and admitted that he was discharged from prison on October 19, 1989.
In addition to the above documentary evidence, the State presented the testimony of three witnesses. Martin Caillouet testified that he was the assistant district attorney who prosecuted the defendant in 1984 for his second simple burglary conviction. Donald Yates testified that he was the defendant's probation supervisor from 1984 until his probation was revoked in 1985. He testified that the defendant had been placed on probation for a 1981 simple burglary conviction. Both Mr. Caillouet and Mr. Yates identified the defendant. Finally, Lt. Fast identified the defendant and testified that he was the same person who was convicted of forcible rape in December of 1990. Thereafter, the State rested. The defense produced no evidence. At the conclusion of the habitual offender hearing, the trial court considered all of the evidence, took judicial notice of the defendant's conviction for forcible rape and of his trial testimony admitting the two prior simple burglary convictions, and adjudicated the defendant to be a third felony habitual offender. After a review of the testimony and the documentary evidence introduced at the habitual offender hearing, we find that the State introduced sufficient proof of the defendant's habitual offender status. Therefore, we conclude that the trial court correctly adjudicated the defendant to be a third felony habitual offender. This assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. NINE, TEN, FIFTEEN, SIXTEEN, AND SEVENTEEN:
All these assignments of error relate to the sentencing hearing on February 22, 1991, and the sentence imposed at the conclusion of that hearing. In assignment of error number nine, the defendant contends that the trial court erred in considering an "Initial Investigation Report" which contained a summary of an indirect threat upon Lt. Fast and his family allegedly made by the defendant. In assignment of error number ten, the defendant contends that the trial court erred in expanding the scope of the sentencing hearing to include testimony by Lt. Fast about a direct threat against him and his family allegedly made by the defendant. In assignments of error numbers fifteen and sixteen, the defendant contends that the trial court erred in failing to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1 and in imposing an excessive and indefinite sentence. In assignment of error number seventeen, the defendant contends that the trial court erred in failing to order a presentence investigation report because the postsentence investigation report was not prepared within sixty days of sentencing, as required by LSA-C.Cr.P. art. 876.
At the sentencing hearing, the State established that the defendant made two threats against Lt. Fast and his family. The first threat was communicated directly to Lt. Fast by the defendant inside the courtroom at the February 4, 1991 habitual offender hearing. According to Lt. Fast, *697 the defendant informed him: "When I get out I'm going to come back and I'm going to f___ your wife, I'm going to f___ your daughter and you're going to suck my d___." The second threat was indirect. According to Lafourche Parish Sheriff's deputies Charles Reading, Larry Benoit, and Moise David Johnson, at the conclusion of the February 4, 1991 hearing, as the defendant was being transported back to jail, he asked Deputy Reading to inform Lt. Fast that he would return, and the next time it would be Lt. Fast's wife and daughter. This indirect threat was contained in the Initial Investigation Report introduced into evidence at the sentencing hearing. In assignment of error number nine, the defendant contends that the trial court erred in considering this report and its contents in sentencing the defendant because the report was "totally inaccurate." In assignment of error number ten, the defendant contends that the trial court erred in expanding the scope of the sentencing hearing to include not only an exploration of the indirect threat, but an exploration of the direct threat made to Lt. Fast. Specifically, the defendant contends that, at the beginning of the sentencing hearing, the trial court agreed to limit the scope of the hearing to the indirect threat alone.
The sources of information from which a sentencing court may draw are extensive, and traditional rules of evidence are not bars to consideration of otherwise relevant information. State v. Rankin, 563 So.2d 420, 423 (La.App. 1st Cir. 1990). In the absence of allegations of mistake or falsehood, evidence of uncharged offenses is admissible and is a valid factor for consideration in sentencing. State v. Rankin, 563 So.2d at 424.
The defendant's assertion in brief that the Initial Investigation Report was "totally inaccurate" is a misrepresentation of fact. At the sentencing hearing, the only inaccuracy revealed in the Initial Investigation Report was the statement that the defendant made the indirect threat "after being sentenced for rape." The Initial Investigation Report correctly noted that, on February 4, 1991, the defendant had been adjudicated a multiple offender. The report was incorrect in stating that the defendant also had been sentenced for rape, because the sentence had not yet been imposed. However, this inaccurate statement had no bearing whatsoever on the allegation that the defendant made an indirect threat against Lt. Fast and his family outside the courtroom on that date, nor did it detract from the remaining contents of the report. The testimony adduced at the sentencing hearing conclusively established that the defendant made two separate threats against Lt. Fast and his family, one direct and one indirect. Even if the trial court did expand the scope of the hearing to include testimony about the direct threat made inside the courtroom, as well as testimony concerning the indirect threat made outside the courtroom, we find no prejudice to the defendant. Defense counsel was afforded an opportunity to cross-examine Lt. Fast about the direct threat and he did so at length. Accordingly, the trial court properly considered evidence of these two threats in sentencing the defendant.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. *698 State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
At the sentencing hearing, the trial court provided extensive reasons in support of the sentence. Reviewing the defendant's criminal record, the trial court stated that the defendant was a third felony habitual offender because of his two prior felony convictions for simple burglary. Noting that the defendant's probation was revoked when he committed the second simple burglary, the trial court found an undue risk that the defendant would commit another crime during a period of a suspended sentence or probation. Reviewing the threats made against Lt. Fast and his family, the trial court characterized the defendant as "evil and vindictive." Reviewing the circumstances of the instant offense, the trial court stated that the defendant's conduct was unprovoked and was not induced or facilitated by the victim. The trial court characterized the offense as brutal, painful, and humiliating, and the Court stated that any lesser sentence would deprecate the seriousness of the offense. The trial court stated that the defendant was in need of correctional treatment and concluded that he should be incarcerated for a long period of time to protect society. In our view, the trial court thoroughly complied with the Article 894.1 guidelines. Furthermore, contrary to the defendant's argument, the trial court did not rely on unsubstantiated information in sentencing the defendant. Instead, the trial court's statement of reasons was supported by the defendant's prior criminal record, the circumstances of the instant offense, and the defendant's conduct and demeanor during the trial and other related proceedings.
For his conviction of forcible rape, the defendant was exposed to a minimum sentence of five years at hard labor and a maximum sentence of forty years at hard labor, including at least two years without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:42.1B. However, upon being adjudicated a third felony habitual offender, the defendant was exposed to a minimum sentence of twenty-six years and eight months at hard labor, and a maximum sentence of eighty years at hard labor without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 15:529.1A(2)(a). The defendant received a sentence of seventy years at hard labor, including four years without benefit of parole, probation, or suspension of sentence.[2] Considering the reasons for sentencing given by the trial court, the circumstances of the instant offense, and the defendant's status as a third felony habitual offender, we find no abuse of discretion in the sentence imposed.
Finally, the defendant contends that the trial court erred in failing to order a presentence investigation report because the postsentence investigation report was not prepared within sixty days of sentencing, as required by LSA-C.Cr.P. article 876. However, the defendant does not contend that he requested the preparation of a presentence investigation report. Furthermore, even if the defendant made such a request, the ordering of a presentence investigation report lies within the discretion of the trial court. LSA-C.Cr.P. art. 875A(1); State v. Wimberly, 414 So.2d 666, 671 (La.1982). We find no error. Moreover, the absence of a postsentence investigation report does not warrant reversal of *699 a conviction or sentence, nor is such a matter properly raised on appeal. Instead, the defendant's remedy lies first with the division of probation and parole supervision and/or with the trial court. State v. Johnson, 389 So.2d 1302, 1306 (La.1980).
For the above reasons, these assignments of error are meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Comment (d) to Article 615 provides, in pertinent part:

On the other hand, the exemption of representatives may, if mechanically applied, result in manifest unfairness such as by undermining the right to meaningful cross-examination. Nothing in this Article is intended to deprive the trial court of the power to sequester witnesses in such cases in the interests of justice. See LSA-C.Cr.P. art. 17. Such a potentially prejudicial situation is presented, of course, in criminal cases when a law enforcement officer who is designated as the state's representative is expected also to testify as a fact witness. In such a situation the court should take appropriate measures to minimize the possibility of prejudice, such as permitting the case agent to be designated as the state's representative only if he testifies prior to all other fact witnesses.
[2] In his brief to this Court, the defendant contends that the sentence imposed was indefinite and, therefore, excessive and illegal. Specifically, the defendant notes a discrepancy between the trial court's written sentence, which indicated "at least" four years to be served without benefit of parole, probation, or suspension of sentence, and the sentencing transcript, which stated "four years of which will be without the benefit of probation, parole or suspension of sentence."

We also note that the minutes indicate that the sentence was imposed with "at least" four years of the sentence to be served without benefit of parole, probation, or suspension of sentence. Where there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Toomer, 572 So.2d 1152, 1155 n. 2 (La.App. 1st Cir.1990). In fact, we note that the defendant is not eligible for parole, probation, or suspension of sentence for the entire length of this sentence. As an habitual offender, he was not eligible for probation or a suspended sentence. See LSA-R.S. 15:529.1G. Because he has three felony convictions, defendant is not eligible for parole. See LSA-R.S. 15:574.4A(1).